PEOPLE v EASON

Docket No. 82718. Argued December 8, 1988 (Calendar No. 8). Decided July 5, 1990.

Charles E. Eason was convicted by a jury in the Detroit Recorder's Court, Michael J. Talbot, J., of possession with intent to deliver less than fifty grams of cocaine. His sentence was enhanced pursuant to the second-offender provision of the controlled substance act. The Court of Appeals, GILLIS, P.J., and HOLBROOK, JR., and S. N. ANDREWS, JJ., affirmed the defendant's conviction in an unpublished opinion per curiam, but remanded the case for resentencing, holding that the defendant must be charged as an habitual offender before his sentence could be enhanced (Docket No. 91429). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY and Justices BRICKLEY and GRIFFIN, the Supreme Court *held:*

A defendant charged under a statute which provides for imposition of an enhanced sentence on a person previously convicted of an offense under the same statute is not entitled to notice within fourteen days of arraignment of the prosecutor's intent to seek sentence enhancement or to a separate proceeding on the question whether the defendant has previously been convicted of a controlled substance offense.

1. Due process requires reasonable notice and an opportunity to be heard relative to a recidivist charge. However, due process does not require the filing of a separate charge pursuant to a statute that does not create a new offense but simply authorizes the sentencing court to enhance the sentence. The prosecutor is not required to charge the prior conviction in the information because it is not an element of a new charge, separate from the offense for which the defendant is presently charged. Instead, the prior conviction is a factor which the court may consider when imposing sentence. While a defendant may challenge the accuracy of the information in a presentence report and is entitled to an opportunity to be heard on the

REFERENCES

Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 19, 23.
See the Index to Annotations under Habitual Criminals and Subsequent Offenders.

matter if accuracy is contested, and while due process requires notice of the information in the report sufficiently in advance of sentencing to provide a meaningful opportunity to contest its accuracy, an enhanced sentence based on a prior conviction of the same statute is not subject to the requirement that a prosecutor must file a supplemental information not more than fourteen days after a defendant is arraigned, nor does it require an adversarial proceeding.

2. The sentence-enhancement provision of the controlled substance act does not provide a defendant who is a subsequent offender under the same statute a right to early notice of sentence enhancement. Nor does it provide for a separate proceeding to determine the question of a defendant's prior conviction of a drug offense. The sentence enhancement provision is a legislative authorization for judges to tailor punishment to the criminal on the basis of an objective factor, i.e., a prior conviction of the same statute. The habitual offender statutes are considered alternate sentencing provisions rather than penalty-enhancement provisions. Under the habitual offender act, a separate charge must be filed, the defendant is entitled to a full jury trial, and the prior convictions must be proved beyond a reasonable doubt. Where a statute does not contemplate a separate trial-type proceeding, but rather provides for sentence enhancement, due process requires a reasonable opportunity to challenge the accuracy of the information relied on in passing sentence. Unlike situations in which a statutory scheme and elements of an offense are created and due process requires notice of the charge and proof beyond a reasonable doubt, there is no due process requirement that the prosecutor charge a prior drug conviction in an information in order to enable a defendant's sentence to be enhanced on the basis of the prior conviction. The prior offense is not an element of a separate charge. Nor does due process entitle the defendant to a trial-type procedure regarding the use of the prior convictions for sentencing purposes. In this case, the defendant was informed prior to sentencing of the increased penalty for a second offense and had an opportunity at sentencing to contest the accuracy of the information in the presentence report. Because he did not challenge the fact that he was a second offender, the Court of Appeals erred in vacating his sentence, and the sentence imposed by the trial court must be reinstated.

3. In a typical sentencing proceeding, due process assures the right to be sentenced on the basis of accurate information, but does not require trial-type procedures. Due process should not

be treated as a device for freezing the evidentiary procedure of sentencing in the mold of trial procedure; an individualized sentence can be based on any relevant and reliable information. When one proceeding is the basis for commencing another proceeding under a different act requiring a new finding of fact, further procedural safeguards are necessary to satisfy constitutional requirements. Due process protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. In this case, the second-offender provision of the controlled substance act neither seeks to impose additional penalties on the basis of a finding of fact equivalent to a new charge nor changes the definition of an existing offense. It merely authorizes an increased penalty where the defendant has been convicted previously of a like offense. Due process does not compel a separate charge or impose trial-type evidentiary burdens on the sentencing process.

Justice CAVANAGH, joined by Justice ARCHER, concurring, stated that the constitutional guarantee of due process does not require that a defendant's prior conviction be treated as a new crime that must be separately charged and proven at a separate trial. Before an enhanced penalty under § 7413(2) may be imposed, a defendant is entitled to contest alleged prioroffender status at an adversarial hearing where the prosecution bears the burden of proving the sentence-enhancing fact by at least a preponderance of the evidence, and where the defendant has the right to be represented by counsel, to present evidence, and to confront and cross-examine any witnesses. The defendant's decision to admit a prior conviction and waive these safeguards must be preceded by adequate notice so that the decision is knowing and voluntary.

The defendant in this case has not claimed that he or his counsel had inadequate time or information to prepare to contest the prior conviction, and neither he nor his counsel requested a continuance for that purpose. In addition, he has never denied that he committed the prior offense or that the conviction was invalid. Absent a claim that his admission of the prior conviction was not knowing or voluntary or a showing of prejudice, there is no constitutional basis for vacating his sentence.

Reversed.

Justice LEVIN, dissenting, stated that the procedural safeguards applicable under the habitual offender provisions of the Code of Criminal Procedure apply to sentence enhancement under the controlled substances article of the Public Health Code.

CRIMINAL LAW — SENTENCE ENHANCEMENT — CONTROLLED SUB-
STANCE ACT.

A defendant charged under a statute which provides for imposi-
tion of an enhanced sentence on a person previously convicted
of an offense under the same statute is not entitled to notice
within fourteen days of arraignment of the prosecutor's intent
to seek sentence enhancement or to a separate proceeding on
the question whether the defendant has previously been con-
victed of a controlled substance offense (MCL 333.7413[2]; MSA
14.15[7413][2]).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, and *Timothy A. Baughman,*
Chief, Criminal Division, Research, Training and
Appeals, for the people.

*Monash, Monash & Goldberg, P.C.* (by *Richard
A. Monash*), for the defendant.

BOYLE, J. We granted leave to appeal to deter-
mine whether the procedural safeguards[1] sur-
rounding a formal trial must be afforded a defen-
dant subjected to an enhanced sentence pursuant
to the second-offender provisions of the controlled
substance act, MCL 333.7413; MSA 14.15(7413).
We hold that a defendant charged under a statute
which provides for imposition of an enhanced sen-
tence on an individual previously convicted of an
offense under the same statute is not entitled to
notice within fourteen days of arraignment of the
prosecutor's intent to seek sentence·enhancement
or to a separate proceeding on the question
whether he has previously been convicted of a
narcotics offense.

I

The questions presented in this case are: 1) did

[1] Const 1963, art 1, § 17. US Const, Ams V, XIV.

the Legislature intend to require a supplementary information and a separate fact-finding proceeding under this statute, and, 2) if not, does the legislative scheme offend the constitution?

Despite recent modification of sentence enhancement provisions, the Legislature has not granted defendants who are subsequent offenders under the same statute a right to early notice of sentence enhancement. Nor has it provided for a separate proceeding to determine the question of a defendant's prior conviction of a drug offense. The sentence enhancement provision is a legislative authorization for judges to tailor punishment to the criminal on the basis of an objective factor, i.e., a prior conviction under the same statute.

The Legislature has long provided that where a prosecutor intends to proceed under the habitual offender act, a separate charge must be filed, the defendant is entitled to a full jury trial, and the defendant's prior convictions[2] must be proven beyond a reasonable doubt. The habitual offender statutes are considered alternate sentencing provisions rather than penalty-enhancement provisions.[3]

In creating a sentence enhancement provision in the controlled substance act, the Legislature took a factor, the defendant's prior criminal convictions, a traditional consideration in determining a defendant's sentence, and authorized a weight to be given that factor, i.e., not more than twice the term authorized.[4] The statute is directed to facts

---

[2] MCL 769.10-769.13; MSA 28.1082-28.1085.

[3] See *People v Fountain*, 407 Mich 96; 282 NW2d 168 (1979). In *Fountain*, the Court noted that defendant Jones was incorrectly sentenced for the unarmed robbery conviction, and, as an habitual offender, the defendant may be sentenced only under one or the other charge. *Id.*, p 98, n 2. See also, e.g., *People v Kraai*, 92 Mich App 398; 285 NW2d 309 (1979).

[4] Although there is no express statutory requirement that the

which relate to the criminal, not to the crime, and nothing in the act suggests a proceeding other than that comporting with the fundamental due process requirement that a sentence must be based on accurate information and a defendant have a reasonable opportunity at sentencing to challenge such information.

By contrast, in situations in which the state creates a statutory scheme and elements of an offense, due process requires both notice of the charge and proof by the prosecutor of each element beyond a reasonable doubt. *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Conversely, a state may define the elements of an offense, and due process does not require the state to satisfy the reasonable-doubt standard as to facts not included in the statutory definition of an offense, so long as the definition does not offend a deeply rooted principle of justice. *Patterson v New York,* 432 US 197; 97 S Ct 2319; 53 L Ed 2d 281 (1977). Thus, due process does not require the state to proceed by notice of a separate charge, the right to trial by jury, and proof beyond a reasonable doubt wherever sentence enhancement is authorized.

Due process does not require the prosecutor to charge the prior drug conviction in the information in order for the defendant's sentence to be enhanced on the basis of the prior conviction because the prior offense is not an element of a separate charge.[5] Nor is the defendant entitled to

habitual offender act be applied to other sentence enhancement provisions, this Court and the Court of Appeals have implied such requirements in both criminal sexual conduct, MCL 750.520f; MSA 28.788(6), and controlled substance cases. See *People v Urynowicz,* 412 Mich 137; 312 NW2d 625 (1981). See also *People v Wright,* 405 Mich 832; 275 NW2d 1 (1979), *People v Lester,* 417 Mich 927; 330 NW2d 854 (1983), and *People v Stout,* 116 Mich App 726; 323 NW2d 532 (1982).

[5] Indeed, even if the prosecutor overlooked the prior conviction, if

a trial-type procedure regarding the use of the defendant's prior drug convictions for sentencing purposes.[6]

In the instant case, the court informed the defendant prior to sentencing of the increased penalty for a second offense, the defendant had the opportunity at sentencing to contest the accuracy of the information included in the presentence report, and the accuracy of the information was admitted.[7]

Where the statute does not contemplate a separate trial-type proceeding but, rather, provides for sentence enhancement, due process requires a reasonable opportunity to challenge the accuracy of the information relied on in passing sentence.[8] Because the defendant did not challenge the fact that he was a second offender, the Court of Appeals erred in vacating his sentence and remanding the case for resentencing. Accordingly, the decision of the Court of Appeals is reversed and the sentence imposed by the trial judge is reinstated.

the matter came to the trial court's attention through the presentence investigation, the judge would be authorized to enhance the sentence provided the defendant did not claim lack of notice or contest the factual accuracy thereof.

[6] *United States v Brown,* 381 US 437, 458; 85 S Ct 1707; 14 L Ed 2d 484 (1965).

[7] Had the defendant chosen to contest the accuracy of the information in the presentence report and claimed surprise at the hearing, and had the trial judge not allowed the defendant an opportunity to address the issue, the proper remedy would be to provide an opportunity for the defendant to contest the accuracy of the report which would be accomplished by a remand to the trial court.

However, an evidentiary hearing at the sentencing stage is not an adversary trial, and due process is satisfied so long as the information the sentencing judge considers has sufficient indicia or reliability. *United States v Blade,* 811 F2d 461, 468 (CA 8, 1987).

[8] Because sentencing is a critical stage of the proceedings, the defendant has a Sixth Amendment right to counsel. *Mempa v Rhay,* 389 US 128; 88 S Ct 254; 19 L Ed 2d 336 (1967).

II

On February 25, 1985, law enforcement personnel raided the defendant's house and seized a small amount of cocaine and more than $30,000 in cash. The defendant was charged with possession with intent to deliver less than fifty grams of cocaine. MCL 333.7401(1) and (2)(a)(iv); MSA 14.15(7401)(1) and (2)(a)(iv). The maximum sentence for this offense is twenty years in prison.

On July 12, 1985, the defendant was arraigned in Detroit Recorder's Court, and on September 12, 1985, the prosecutor filed a written notice[9] of his intent to seek an enhanced (doubled) sentence pursuant to MCL 333.7413(2); MSA 14.15(7413)(2).

The defendant was convicted by a jury of possession with intent to deliver less than fifty grams of cocaine, and on January 31, 1986, was sentenced to a maximum of forty years in prison.[10] Although advised at sentencing that the court was relying on the defendant's prior conviction for possession of heroin, neither the defendant nor counsel contested the accuracy of the prior conviction, and counsel confirmed that the presentence report was accurate.

On March 7, 1986, the defendant moved to

[9] The defendant contended he had no knowledge of the prosecutor's intent to seek sentence enhancement and that there was no documentation indicating that the letter notifying the court and him of the intent was ever time stamped as having been received by a clerk of the trial court. In addition, the defendant asserted there was no proof of service in the file indicating that the opposing side was in fact served. The notice of intent was dated September 12, 1985. However, it did not bear the lower court's date stamp.

The defendant was previously convicted of possession of a controlled substance and was sentenced on March 3, 1980.

[10] At sentencing the judge noted that the defendant had previously been convicted of second-degree murder in 1979 and for possession of heroin in 1983. The judge indicated that he intended to deviate from the sentencing guidelines because, given the defendant's background and the jury's conclusion that the defendant sold drugs, the guidelines which called for a thirty- to forty-two-month sentence were totally inadequate.

vacate the sentence on the basis that the defendant's prior drug conviction was not charged in either the information or a supplemental information *and* that the prosecutor had not proven that the defendant was a recidivist drug offender. The defendant relied on *People v Stout,* 116 Mich App 726, 735; 323 NW2d 532 (1982), in which the Court of Appeals held:

> In our view the quoted language from [*People v*] *Urynowicz* [412 Mich 137; 312 NW2d 625 (1981)] makes clear that a subsequent drug offender's sentence may not be enhanced unless the prior drug offense is charged in either the information or a supplemental information *and* the prosecutor proves that the defendant is a recidivist drug offender. [Emphasis in original.]

The sentencing judge believed the Court of Appeals erred in *Stout,* but also that, under *Stout,* the notice filed was sufficient because the defendant received the notice and had not contested his conviction on the underlying charge. The motion was denied.

In an unpublished per curiam opinion, the Court of Appeals affirmed the defendant's conviction but remanded the case for sentencing.[11] The Court of Appeals agreed with the defendant that the prosecution must charge the defendant as an habitual offender before his sentence could be enhanced under MCL 333.7413, 769.10(1)(c), 769.13; MSA 14.15(7413), 28.1082(1)(c), 28.1085.

Relying on our decisions regarding proceedings under the habitual criminal act, the Court held that the prosecutor must file a supplemental information not more than fourteen days after a defendant is arraigned in circuit court unless the prose-

---

[11] *People v Eason,* unpublished opinion per curiam of the Court of Appeals, decided January 22, 1988 (Docket No. 91429).

cutor is unaware of any prior felony record until after conviction or the delay in filing the information is due to the need to verify out-of-state felony convictions based on the record of a defendant's prior arrests. *People v Shelton,* 412 Mich 565; 315 NW2d 537 (1982), reh den 413 Mich 1108 (1982). As these exceptions were not applicable, the Court of Appeals vacated the defendant's sentence and remanded the case to the trial court for resentencing[12] solely on defendant's charge of possession with intent to deliver cocaine.

The prosecution contends that earlier decisions of this Court imposed procedural requirements in the sentence enhancement context that the Legislature never intended.[13] See *People v Urynowicz, supra, People v Wright,* 405 Mich 832; 275 NW2d 1 (1979), and *People v Lester,* 417 Mich 927; 330 NW2d 854 (1983). The prosecutor further submits that the recent ruling of the United States Supreme Court in *McMillan v Pennsylvania,* 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986), provides a justification for reconsideration regarding the issue what procedures are required under due process when the court enhances a defendant's sentence pursuant to MCL 333.7413(2); MSA 14.15(7413)(2).

The defendant claims that the prior drug offense must be charged in either the information or a supplemental information, and that the prosecutor

[12] In addition, the defendant claimed he was entitled to be sentenced by the judge who presided over the trial. Judge Talbot presided over part of the trial and sentenced the defendant, and the Court of Appeals found there had not been any error.

[13] The prosecution notes that this is clear when the language used by the Legislature in MCL 333.7413(2); MSA 14.15(7413)(2), "[a]n individual convicted of a second or subsequent offense under this article may be imprisoned for not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both," is compared with the language of MCL 769.13; MSA 28.1085 in which the Legislature requires a full trial if the defendant pleads not guilty to the charge of prior felony convictions.

must prove that the defendant is a recidivist drug offender.

### III

The issue presented is whether the sentence provision of the controlled substance act, authorizing an enhanced penalty for a defendant previously convicted of a like offense, offends due process by failing to provide prior notice of intent to enhance or a separate adversarial proceeding to establish *proof* of the prior conviction. *People v Stout, supra.*

It is well settled that in a criminal trial, the defendant's conviction must rest on evidence which proves "beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged"[14] and includes the right to a trial by jury,[15] a public trial, counsel, confrontation of adverse witnesses, and a fair and speedy trial. The most fundamental of these safeguards in a criminal proceeding is the right to a trial by jury.[16] See *Duncan v Louisiana,* 391 US 145, 158, n 30; 88 S Ct 1444; 20 L Ed 2d 491 (1968); *Baldwin v New*

---

[14] *Davis v United States,* 160 US 469, 493; 16 S Ct 353; 40 L Ed 499 (1895). See *In re Winship, supra,* pp 363-364. The policy considerations underlying the reasonable doubt standard include the protection of a defendant's liberty interest, and the reduction of the risk of erroneous convictions.

See also note: *Criminal law—Fourteenth Amendment Due Process Clause—preponderance standard satisfies due process where state makes visible possession of firearm sentencing factor rather than component of crime,* 18 St Mary's L J 543, 545-546 (1986).

[15] See, generally, *Duncan v Louisiana,* 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968).

[16] Trial by jury of one's peers has long been regarded as a precious and intractable right and the right is expressly reserved in the constitution, the Bill of Rights, and in the state constitution. Note, *Enhanced sentencing under North Carolina's DWI statute: Making due process disappear*—Field v Sheriff of Wake County, NC, 23 Wake Forest L R 517, 525 (1988).

*York,* 399 US 66, 72; 90 S Ct 1886; 26 L Ed 2d 437 (1970).

By contrast, the due process right at a typical sentencing hearing is the right to be sentenced on the basis of accurate information. Trial-type procedures are not required. *Williams v New York,* 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1949).[17] In *Williams,* the United States Supreme Court rejected a claim that the defendant was denied the opportunity to confront and examine his accusers by the trial court's reliance on the presentence investigation as the basis for its sentence. *Id.,* p 244. The Court held the procedure did not violate due process[18] and identified a distinction between guilt determination and sentencing, observing:

> In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. . . . [B]efore verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. . . . A

[17] Early principles of sentencing due process doctrine were established by the United States Supreme Court in *Williams v New York.* Weissman, *Sentencing due process: Evolving constitutional principles,* 18 Wake Forest L R 523, 524 (1982). See also *United States v Satterfield,* 743 F2d 827, 840 (CA 11, 1984), cert den 471 US 1117 (1985).

[18] The holding of *Williams* represented a divergence from another seminal sentencing decision decided in the previous year, *Townsend v Burke,* 334 US 736; 68 S Ct 1252; 92 L Ed 1690 (1948). In *Townsend,* the United States Supreme Court held the defendant's due process rights were violated when the defendant was sentenced on the basis of false information concerning his criminal record. *Id.,* p 740. While at first blush the holding of *Townsend* appears to support the idea that the Court favored increased due process safeguards at sentencing, the decision was limited by the Court's emphasis on the total lack of effort with which the sentencing judge investigated the truth of the defendant's past convictions, three of which were charges that had either been dismissed or resulted in a finding of not guilty.

sentencing judge, however, is not confined to the
narrow issue of guilt. . . . Highly relevant—if not
essential—to his selection of an appropriate sen-
tence is the possession of the fullest information
possible concerning the defendant's life and char-
acteristics. [*Id.*, pp 246-247.]

The Court concluded that the "due process clause
should not be treated as a device for freezing the
evidentiary procedure of sentencing in the mold of
trial procedure." *Id.*, p 251.

Decisions following *Williams* supported tradi-
tional individualized sentencing on the basis of a
broad inquiry.[19] The Court held that while infor-
mation obtained in violation of a defendant's right
to counsel[20] could not be considered, a sentencing
judge might permissibly take into account a defen-
dant's trial conduct[21] and the defendant's refusal
to coöperate with law enforcement officials.[22] The
basic tenor of these cases is that an individualized
sentence can be based on any relevant and reliable
information, and that, while normal sentencing
proceedings are not immune from due process
attacks, only minimal due process protections are
required in those proceedings. *United States v*

[19] See *United States v Tucker*, 404 US 443; 92 S Ct 589; 30 L Ed 2d
592 (1972); *United States v Grayson*, 438 US 41; 98 S Ct 2610; 57 L Ed
2d 582 (1978); *Roberts v United States*, 445 US 552; 100 S Ct 1358; 63
L Ed 2d 622 (1980).

[20] The United States Supreme Court held information regarding
prior convictions obtained in violation of a defendant's right to
counsel could not be considered as sentencing factors by the trial
judge at the sentencing hearing. *United States v Tucker*, pp 443, 447.

[21] In *Grayson*, n 19 *supra*, p 44, the trial judge discounted the
defendant's credibility due to the defendant's testimony during trial
in which the defendant denied his guilt.

[22] The sentencing judge took into account the defendant's persistent
refusal to coöperate with law enforcement authorities in identifying
other participants in the drug conspiracy. The United States Supreme
Court concluded such refusal was highly relevant on the issue of the
defendant's prospects for rehabilitation and thus was properly consid-
ered at sentencing. *Roberts v United States*, n 19 *supra*, p 552.

*Davis,* 710 F2d 104 (CA 3, 1983), cert den 464 US 1001 (1983).

However, the Supreme Court has required additional procedural safeguards to satisfy due process requirements in situations in which a court seeks to impose additional penalties on a defendant pursuant to a finding of fact equivalent to invoking a new charge.[23] *Specht v Patterson,* 386 US 605; 87 S Ct 1209; 18 L Ed 2d 326 (1967). In *Specht,* the defendant was convicted under one Colorado statute for indecent liberties which carried a maximum sentence of ten years.[24] *Id.,* p 607. Thereafter, the defendant was sentenced under a different act[25] for a sentence of one day to life without full notice or a hearing. *Id.*

The Court noted that the act made one conviction the basis for invoking a separate proceeding under the sex offenders act, thus requiring a determination that constituted "a new finding of fact." *Id.,* p 608. As such, the defendant was entitled to the " 'full panoply of the relevant protections which due process guarantees in state criminal proceedings . . . all those safeguards which are fundamental rights and essential to a fair trial . . . .' " *Id.,* pp 609-610, citing *Gerchman v Maroney,* 355 F2d 302, 312 (CA 3, 1966).

Subsequent to the *Specht* decision, in 1970, the United States Supreme Court declared that the

[23] Note, *The constitutionality of statutes permitting increased sentences for habitual or dangerous criminals,* 89 Harv L R 356, 364 (1975).

[24] Colo Rev Stat Ann, § 40-2-32 (1963).

[25] Pursuant to the Colorado sex offenders act, Colo Rev Stat Ann, §§ 39-19-1 to 10 (1963), if the trial court was of the opinion that a person convicted of specified sex offenses constituted a threat of bodily harm to the public or was an habitual offender and mentally ill, the state could sentence a defendant to commitment in a mental institution as a sexual psychopath for an indefinite period. *Id.* The only procedural requirements were that the state have the defendant examined and a psychiatric report prepared for the trial judge prior to sentencing. *Id.,* p 608.

Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra,* p 364. Five years later in *Mullaney v Wilbur,* 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975), the Court held that Maine's homicide statute impermissibly shifted the burden of proof to the defendant on the issue of heat of passion on sudden provocation. Justice Powell observed:

> [I]f *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment. [*Id.,* p 698.]

However, in *Riviera v Delaware,* 429 US 877; 97 S Ct 226; 50 L Ed 2d 160 (1976), the Court confirmed that it remained constitutional to burden the defendant with proving the insanity defense, and also held that the state could place the burden of proving a new affirmative defense, extreme emotional disturbance, on the defendant when the affirmative defense did "not serve to negative any facts of the crime which the State is to prove in order to convict of murder." *Patterson v New York, supra,* p 207.

While *Winship* and *Specht* establish that a Legislature is not wholly free to define elements of an offense as factors bearing only on punishment, it is clear that the limitation is a narrow exception to the deference accorded a state's administration of justice.

Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. [*Patterson v New York, supra,* p 210.]

In *McMillan, supra,* p 86, the Court recently has reaffirmed the state's ability to pursue "its chosen course in the area of defining crimes and proscribing penalties." The Court rejected a due process challenge to a state statute that provided for imposition of a mandatory minimum sentence where a sentencing judge finds by a preponderance of the evidence that an individual convicted of an offense "visib[ly] possess[ed] a firearm" during its commission.[26]

While declining to define the express parameters of the state's authority to define the elements of an offense, the Court observed that *Patterson* had rejected the claim that whenever a state linked the severity of punishment to the presence or absence of an identified fact, *McMillan, supra,* p 84, the state must prove that fact beyond a reasonable doubt. The Court further distinguished *Specht* on the basis that in *Specht* the defendant was confronted with a "radically different situation" from the usual sentencing proceeding. The Court observed:

The Pennsylvania Legislature did not change the definition of any existing offense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony —and dictated the precise weight to be given that

---

[26] Relying on *In re Winship,* petitioners contended that visible possession of a firearm was an element of the crimes for which they were being sentenced and thus must be proved beyond a reasonable doubt.

factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an "element" of some hypothetical "offense." [*Id.,* pp 89-90.]

Of significance to the language in *Stout, supra,* that the prosecution *prove* the factor that authorizes enhancement, the Court also observed that "Sentencing courts have traditionally heard evidence and found facts without any prescribed burdens of proof at all," *McMillan, supra,* p 91, and noted "embracing . . . the clear-and-convincing standard here would significantly alter criminal sentencing, for we see no way to distinguish the visible possession finding at issue here from a host of other express or implied findings sentencing judges typically make on the way to passing sentence." *Id.,* p 92, n 8.[27]

The second-offender provision with which we here deal likewise neither seeks to impose additional penalties on the basis of a finding of fact equivalent to a new charge, *Specht,* nor changes the definition of an existing offense, *Winship.* It simply takes one factor that has historically been of paramount importance in imposing an appropriate sentence, a previous conviction for a like offense, and authorizes an increased penalty. Therefore, due process neither compels a separate charge nor imposes trial-type evidentiary burdens on the sentencing process.

IV

In the present case, the Court of Appeals va-

---

[27] While it is true that the Court also observed that the sentencing scheme in question did not alter the maximum penalty for the crime, it is clear that the factor here made relevant for sentencing purposes, a prior conviction of a crime, historically has been considered one of the most significant factors bearing on appropriate punishment.

cated the defendant's sentence and remanded to the lower court for resentencing on the basis that the defendant did not receive sufficient notice of the prosecutor's intent to seek enhanced sentencing. However, we recognize the existence of precedent from this Court that suggests that it is error for a trial court to enhance a defendant's sentence under the controlled substance act unless a defendant is charged as a second or subsequent offender, as required under the habitual offender act.

Despite the fact that in *Oyler v Boles*, 368 US 448, 452; 82 S Ct 501; 7 L Ed 2d 446 (1962), the United States Supreme Court held that due process required reasonable notice and an opportunity to be heard relative to a recidivist charge, but not notice prior to trial on the underlying offense,[28] this Court, citing *Oyler,* thereafter held that the prosecutor separately, or coincidentally, must charge the defendant as an habitual offender prior to trial on the underlying substantive offense.[29]

---

[28] The United States Supreme Court noted:

Any other rule would place a difficult burden on the imposition of a recidivist penalty. Although the fact of prior conviction is within the knowledge of the defendant, often this knowledge does not come home to the prosecutor until after the trial, and in many cases the prior convictions are not discovered until the defendant reaches the penitentiary. [*Id.,* p 452, n 6.]

[29] The statute requires a separate charge. It does not require an habitual offender charge prior to trial.

If after conviction and either before or after sentence it appears that a person convicted of a felony has previously been convicted of crimes as set forth in section 10, 11, or 12, the prosecuting attorney of the county in which the conviction was had may file a separate or supplemental information in the cause accusing the person of the previous convictions. The court in which the conviction was had shall cause the person to be brought before it and shall inform him of the allegations contained in the information, and of his right to be tried on the

*People v Wright,* 405 Mich 832; 275 NW2d 1
(1979).

The apparent purpose of requiring the informa-
tion to be filed is to provide the accused notice, at
an early stage of the proceedings, of the potential
consequences should the accused be convicted of
the underlying offense. *People v Shelton, supra,* p
569. In *Shelton,* the Court defined "promptly" as
not more than fourteen days after the individual
the prosecutor elects to charge as an habitual
offender is arraigned in circuit court on the under-
lying felony (or before trial if the defendant is
tried within the fourteen-day period).

It is clear from a reading of *Oyler* and *McMillan*
that *Shelton* is distinguishable, and that due pro-
cess does not require the filing of a separate
charge pursuant to a statute that does not create a
new offense but simply authorizes the sentencing
court to enhance the sentence.[30] The prosecutor is

---

allegations, and require the offender to say whether he is the
same person as charged in the information or not. If the
offender says he is not the same person, or remains silent, the
court shall enter a plea of not guilty, and a jury of 12 jurors
shall be impaneled from the petit jurors serving at the then or
a following term of court to determine the issues raised by the
information and plea. The accused may waive trial by jury in
the manner provided by this act. The usual practice in the trial
of criminal actions shall be followed in the impaneling of a jury
and the trial of the issue. . . . If the accused pleads guilty to
the information or if the jury returns a verdict of guilty, the
court may sentence the offender to the punishment prescribed
in section 10, 11, or 12, and shall vacate the previous sentence,
deducting from the new sentence all time actually served on
the vacated sentence if required. [MCL 769.13; MSA 28.1085.]

When the Court has considered a statutory scheme incomplete, it
has imposed additional requirements in accordance with the object or
intent of the statute. While that solution is more appropriately
provided by the Legislature, it has been utilized by this Court when
as in this situation it was believed necessary. Schwartz, *Multiple
punishment for the "same offense": Michigan grapples with the
definitional problem,* 25 Wayne L R 825, 856 (1979).

[30] In circumstances presented by this case, the enhanced sentencing
statutes

☙

not required to charge the prior conviction in the information because it is not an element of a new charge, separate from the offense for which the defendant is presently charged. Instead, the prior conviction is a factor which the judge may consider when imposing the sentence. See *People v Mellor*, 302 Mich 537; 5 NW2d 455 (1942).[31]

Where, as here, the factor, a prior conviction, has not historically been considered an element of the crime, is objectively ascertainable, and carries little risk of erroneous determination, and there is no indication that the Legislature is seeking to avoid the procedural protections of *Winship*,[32] due

have no relation to the circumstances of the wrongdoing constituting the most recent offense, but rather to something which is wholly unrelated thereto. Further, they do not relate to determining what the accused has done, but rather to what the state has *previously* determined that he has done. And that previous determination must have been a formal, *judicial* determination of *guilt;* and hence one as to which the full measure of constitutional protections was available. [See *Buckley v Butler*, 825 F2d 895, 903 (CA 5, 1987). Emphasis in the original.]

[31] By contrast, when a prior conviction is an element of the charge, the earlier offense must be charged in the information when, for example, an individual charged for a second or subsequent offense of driving under the influence of liquor is found guilty of a felony. While the offense is a misdemeanor, a third or subsequent offender can be charged with a felony. MCL 257.625; MSA 9.2325. However, the defendant must be charged as a second, or subsequent offender, which is an element of the underlying felony charge.

Thus, it appears that the better construction of the cases discussed in the dissent is that the Court construed the legislation in question as necessarily requiring a separate information filed to provide the opportunity for a preliminary examination for the defendant and to provide the circuit court with jurisdiction.

Further, the question before the Court is one of legislative intent, and we find it highly doubtful that the Legislature was deemed to be aware of decisions of this Court and relied on liquor law cases from the mid-1920's to require separate charges in the present cases, which involve sentence enhancement and not a separate felony charge as found in the liquor law cases cited by the dissent.

[32] The Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and District of Columbia Circuit Courts have held that the Armed Career Criminal Act, 18 USC App 1202 did not create a separate offense

process requires neither the filing of a separate charge nor adversarial proceedings at sentencing. In sum, "[t]raditional sentencing factors need not be pleaded and proved at trial." *United States v Affleck,* 861 F2d 97, 99 (CA 5, 1988).

The pertinent sentence enhancement provision of the controlled substance act, MCL 333.7413(2); MSA 14.15(7413)(2) provides:

> (2) Except as otherwise provided in subsections (1) and (3), an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both.

Under subsection 2, the trial judge may consider a defendant's prior offense if the present offense is a drug-related crime involving an amount less than fifty grams.[33] In the present case, the defendant was convicted of a second offense of an amount less than fifty grams, and the trial judge imposed a maximum sentence of forty years, twice the twenty-year maximum otherwise authorized.

It is clear that neither the statute nor its predecessor[34] requires an information filed prior to trial

mandating specific pleading or proof of recidivism that triggers enhanced sentencing. *United States v Hawkins,* 811 F2d 210 (CA 3, 1987); *Field v Sheriff of Wake Co, NC,* 831 F2d 530 (CA 4, 1987); *United States v Affleck,* 861 F2d 97 (CA 5, 1988); *United States v Brewer,* 853 F2d 1319 (CA 6, 1988); *United States v Jackson,* 262 US App DC 294; 824 F2d 21 (1987); *United States v Rush,* 840 F2d 574 (CA 8, 1988) (en banc); *United States v West,* 826 F2d 909 (CA 9, 1987); *United States v Gregg,* 803 F2d 568 (CA 10, 1986), cert den 480 US 920 (1987).

[33] The penalties for possession of controlled substances in amounts of fifty grams or more, but less than 650 grams, are addressed in MCL 333.7401(2)(a)(ii) or (iii); MSA 14.15(7401)(2)(a)(ii) or (iii).

[34] The controlled substance act, 1971 PA 196, MCL 335.348; MSA 18.1070(48) provided:

> (1) Any person convicted of a second or subsequent offense

charging the defendant as a second offender under the habitual offender act or prior to a separate jury trial.[35]

This Court's reference to *Wright*,[36] in *Urynowicz*,

---

under this act may be imprisoned for a term up to twice the term otherwise authorized or fined an amount up to twice that otherwise authorized, or both.

(2) For purposes of this section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this act or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs.

The act authorized the sentencing judge to enhance the punishment for certain individuals. If a defendant was a second, or subsequent drug offender, the statute did not contemplate a separate proceeding.

In *People v McFadden*, 73 Mich App 232, 234; 251 NW2d 297 (1977), the defendant argued that the procedural requirements of the habitual offender act should be applied to this section of the controlled substance act. The Court held there was no express statutory requirement that the habitual offender act be applied to this provision and, further, the fact that the Legislature did not write the procedural requirements of the earlier habitual offender act into the controlled substance provision indicated no intent to provide such safeguards. *Id.*, pp 234-235.

However, in 1979 this Court remanded a case for resentencing on the basis that the trial court improperly imposed a double sentence pursuant to MCL 335.348; MSA 18.1070(48). *People v Wright, supra.* The Court again cited *Oyler v Boles, supra,* in which the United States Supreme Court held that due process did not require notice prior to the trial that an habitual criminal proceeding would follow, but did require that the defendant have notice and a reasonable opportunity to be heard on the recidivist charge.

[35] A panel of the Court of Appeals recognized and addressed this issue in *People v Bailey*, 103 Mich App 619; 302 NW2d 249 (1981). The Court noted that the defendant who claimed the trial court erred in sentencing him to a mandatory five-year minimum sentence pursuant to MCL 750.520f; MSA 28.788(6), despite the fact that no supplemental information was filed, was incorrect. *Id.*, p 627. The Court held that there was no such procedural requirement under the act and declined to infer such a requirement.

[36] The Court stated:

In *People v Wright*, 405 Mich 832 (1979), the Court examined the sentence enhancement provision of the Controlled Substances Act. MCL 335.348; MSA 18.1070(48). The defendant had been charged only with delivery of cocaine and conspiracy to deliver cocaine, but he was sentenced as a second offender to

*supra,* a second offense criminal sexual conduct sentence, implied that due process required a separate proceeding whenever a defendant's sentence is increased on the basis of prior offenses. *Id.* For the reasons stated, we are now of the view that the Court erred in *Urynowicz* in concluding due process requires a separate proceeding and proof before enhancing the sentence of a second offender.[37]

---

twice the term of imprisonment authorized. The Court said that doubling the sentence was improper and cited *Oyler v Boles,* 368 US 448; 82 S Ct 501; 7 L Ed 2d 446 (1962) in which the United States Supreme Court required, as a matter of due process, that a defendant receive reasonable notice and an opportunity to be heard on a recidivist charge. [*Urynowicz, supra,* p 143.]

[37] Subsequent to that decision, a panel of the Court of Appeals found that *Urynowicz* overruled, sub silentio, the decision in *People v McFadden, supra,* that the habitual offender act did not have any application to the sentence-enhancement provision of the former controlled substance act. *Stout, supra.* The Court of Appeals vacated the defendant's sentence which had been doubled because it was the defendant's second conviction of a drug offense and stated:

> In our view the quoted language from *Urynowicz* makes clear that a subsequent drug offender's sentence may not be enhanced unless the prior drug offense is charged in either the information or a supplemental information and the prosecutor proves that the defendant is a recidivist drug offender. [*Stout, supra,* p 735.]

Likewise, this Court remanded a case for resentencing which posed the same issue as *Wright, supra,* and noted that a drug offender's sentence could not be enhanced unless the prosecutor complied with the procedures under the habitual offender act:

> Pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, the defendant's sentences are vacated and the matter is remanded on March 21, 1983, to the Genesee Circuit Court for resentencing. The defendant's sentence may not be enhanced pursuant to MCL 333.7413; MSA 14.15(7413) because he was not charged with being a subsequent offender. MCL 769.10, 769.13; MSA 28.1082, 28.1085; *People v Urynowicz,* 412 Mich 137 (1981); *People v Stout,* 116 Mich App 726, 734-735 (1982). [*People v Lester, supra.*]

A defendant may challenge the accuracy of the information contained in the presentencing report and is entitled to an opportunity to be heard on the matter if accuracy is contested. However, enhanced sentences based on prior conviction of the same statute are not subject to the *Shelton* rule, nor do they require adversarial proceedings.

### CONCLUSION

In this case, the defendant contends he did not receive the notice required under *People v Shelton*. He does not contend he was denied a reasonable opportunity to contest the information in the presentence report.[38] Although we hold that the fourteen-day rule in *Shelton* is not applicable to sentence enhancement authorized under this statute, we observe that due process requires notice of the information in the presentence report sufficiently in advance of sentence to provide a meaningful opportunity to contest its accuracy.[39] Thus, we would remand the case to the trial court if we were unable to determine that the defendant was provided a reasonable opportunity to respond to the accuracy of the information in the report.

Here, the record confirms that counsel reviewed the presentence report and guidelines with the defendant, that defendant was given an opportunity to respond to the accuracy of the information

[38] The prosecutor does not contend the defendant waived the right to challenge the accuracy of the information contained in the report by failing to raise the issue at the sentencing hearing. See MCR 6.425(B).

[39] Under the Criminal Rules of Procedure, MCR 6.425(B) provides that the court must permit the prosecutor, the defendant's lawyer, and the defendant to review the presentence report at a reasonable time before the day of sentencing.

If the defendant challenges the information, under MCR 6.425(D)(3), the court must make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account when sentencing the defendant.

contained in the report,[40] and that counsel agreed that the information was accurate.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the sentence imposed below.

Riley, C.J., and Brickley and Griffin, JJ., concurred with Boyle, J.

Cavanagh, J. (*concurring*). I agree with the majority that the Legislature did not intend defendant's status as a second offender under subsection (2) of § 7413 of the controlled substances act, MCL 333.7413(2); MSA 14.15(7413)(2), to be separately charged and proven. I also agree that neither the federal nor the state constitutional guarantees of due process[1] require that defendant's prior conviction be treated as a new crime that must be separately charged and proven at a separate trial.

However, I do not join the lead opinion's suggestion that no additional procedural protections are required under the Due Process Clause in a case, like this one, in which a factual finding at sentencing, unrelated to the proof establishing a defendant's underlying conviction, doubles the maximum sentence to which the defendant is exposed. As I interpret *Specht v Patterson,* 386 US 605, 610; 87 S Ct 1209; 18 L Ed 2d 326 (1967), and *McMillan v Pennsylvania,* 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986), before an enhanced penalty under § 7413(2) may be imposed, a defendant is entitled to contest his alleged prior-offender status at an adversarial hearing where the prosecution carries the burden of proving the

---

[40] The sentencing hearing took place on Friday, January 31, 1986, and at this time the court inquired whether counsel had had an opportunity to go over all the presentence report and guidelines with the defendant. Counsel answered in the affirmative.

[1] US Const, Am XIV; Const 1963, art 1, § 17.

sentence-enhancing fact by at least a preponderance of the evidence, and where the defendant has the right to be represented by counsel, to present evidence, and to confront and cross-examine any witnesses against him. This hearing need not be conducted whenever a defendant is sentenced under § 7413(2), but may be conditioned upon the defendant's choice to contest the existence of his prior conviction. Still, the defendant's decision not to contest, but to admit a prior conviction and waive these safeguards must be preceded by adequate notice so that the decision is knowing and voluntary.

Nevertheless, even though the record permits an inference of inadequate notice and unintelligent waiver, this defendant simply has not raised such a claim. The defendant has never suggested that he or his counsel had inadequate time or information to prepare to contest his alleged prior conviction. Nor did he or his counsel request a continuance for that purpose either when the sentencing judge questioned defense counsel about the accuracy of the allegations in the presentence report, which included reference to defendant's prior drug conviction, or when the enhancement issue was subsequently raised by the judge. Defendant has never, even in this Court, claimed that he did not commit the prior offense or that the prior conviction is somehow invalid. He claims only that the absence of a separate charge and accompanying proof of his prior conviction requires his enhanced sentence to be vacated, and does not demand an opportunity to contest his prior conviction on remand. Absent either a claim by the defendant that his admission of his prior conviction was not knowing or voluntary, or a showing of prejudice,[2] I

[2] See *Oyler v Boles,* 368 US 448, 454; 82 S Ct 501; 7 L Ed 2d 446 (1962); *State v Cooper,* 744 SW2d 447, 449-450 (Mo App, 1987).

conclude that there is no statutory or constitutional basis for vacating defendant's sentence and join the result reached by the majority.

ARCHER, J., concurred with CAVANAGH, J.

LEVIN, J. (*to affirm*). Eason was charged with possession with intent to deliver less than 50 grams of a mixture containing cocaine.[1] The prosecutor did not charge Eason as a repeat offender in the information charging the current offense, nor did the prosecutor file a supplemental information within fourteen days after Eason's arraignment. Eason was convicted as charged. On the basis of a prior drug-related conviction, Eason was sentenced to imprisonment for twenty to forty years.[2]

The Court of Appeals affirmed Eason's conviction but concluded that the procedures applicable under the habitual offender provisions of the Code of Criminal Procedure[3] also apply where the prose-

---

[1] MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv).

[2] The sentence enhancement provision of the controlled substances article of the Public Health Code, provided in pertinent part:

[A]n individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both. [MCL 333.7413(2); MSA 14.15(7413)(2).]

When Eason was sentenced, a person who was convicted of possession with intent to deliver less than 50 grams of cocaine "may be imprisoned for not more than 20 years, or fined not more than $25,000.00, or both." 1978 PA 368, § 7401(2)(a)(iv).

[3] MCL 769.10-769.13; MSA 28.1082-28.1085.

When the prosecutor seeks sentence enhancement under the habitual offender provisions, the general rule is that he must file a supplemental information charging the defendant as an habitual offender within fourteen days of the arraignment or before trial if the defendant is tried within that fourteen-day period. *People v Shelton,* 412 Mich 565, 566; 315 NW2d 537 (1982) (per curiam). If the prosecutor does not learn of the defendant's prior felony conviction until after the defendant's conviction of the most recent offense, the prose-

cutor seeks sentence enhancement under the controlled substances article. Since the prosecutor had not filed a supplemental information charging Eason as a repeat offender within fourteen days after Eason's arraignment,[4] as required in habitual offender proceedings, the Court vacated Eason's sentence.[5]

The majority holds that the procedures applicable to sentence enhancement under the habitual offender provisions of the Code of Criminal Procedure do not apply to sentence enhancement under the controlled substances article. The majority goes on to hold that the "procedures" in the instant case were not violative of the Due Process Clause.

I agree with the majority that the Due Process Clause of the Fourteenth Amendment does not require the prosecutor to notify a defendant before trial on the current offense that, if he is convicted of that offense, he is subject to sentence enhancement on the basis of a prior conviction of a similar offense.

I would hold that the procedures applicable under the habitual offender provisions of the Code of Criminal Procedure apply to sentence enhancement under the controlled substances article. I would affirm the decision of the Court of Appeals

cutor may institute postconviction proceedings to sentence the defendant as an habitual offender. See MCL 769.13; MSA 28.1085. See also *People v Hatt,* 384 Mich 302, 309; 181 NW2d 912 (1970), and *Shelton,* p 569. The only exception to the fourteen-day rule is where the delay in filing the supplemental information is caused by the need to verify an out-of-state conviction based on a rap sheet. See *People v Hendrick,* 398 Mich 410; 247 NW2d 840 (1976).

See also MCR 6.112(C).

[4] The Court of Appeals also concluded that the prosecutor's failure to timely file a supplemental information was not caused by the need to verify an out-of-state conviction or by a failure to learn of Eason's prior conviction until after the trial on the charged offense.

[5] *People v Eason,* unpublished opinion per curiam of the Court of Appeals, decided January 22, 1988, pp 5-6 (Docket No. 91429).

because that Court correctly applied this Court's decisions concerning the requisite procedures.

I

Under both the controlled substances article of the Public Health Code and its predecessor, the Controlled Substances Act, this Court has required the prosecutor to charge the defendant as a second or subsequent offender when seeking sentence enhancement.[6]

A

The only decision of this Court concerning the procedures to be followed when the prosecutor sought sentence enhancement under the Controlled Substances Act is *People v Wright,* 405 Mich 832; 275 NW2d 1 (1979). There, the defendant was charged with delivery of cocaine[7] and conspiracy to deliver cocaine.[8] The prosecutor did not charge Wright as a second offender.[9] Wright was convicted as charged.

Wright argued on appeal that he had been

[6] There is one reported decision involving the sentence enhancement provision for a second or subsequent conviction of unlawful possession or control of a narcotic drug under the Narcotic Drugs Act, 1952 PA 266, 1970 CL 335.153. That statute also did not expressly require the prosecutor to charge the defendant as a repeat offender when seeking an enhanced sentence. In *People v Griffin,* 39 Mich App 464, 466; 198 NW2d 21 (1972), the information charged the defendant as a third offender.

[7] 1971 PA 196, MCL 335.341(1)(b); MSA 18.1070(41)(1)(b). The maximum sentence was imprisonment for seven years and a fine of $5,000.

[8] MCL 750.157a(a); MSA 28.354(1)(a). The maximum sentence for conspiracy is the maximum sentence for the underlying offense plus an additional fine of not more than $10,000 at the discretion of the trial court.

[9] At his arraignment, however, Wright was told that the maximum penalty for the charged offenses was imprisonment for seven years and a fine of $5,000, plus an additional fine of not more than $10,000 at the discretion of the trial court. These are the maximum sentences for a first offense.

denied reasonable notice and an opportunity to be
heard as guaranteed by the Due Process Clause of
the Fourteenth Amendment.[10] The basis for
Wright's claim was that at his arraignment he had
been *misled regarding the maximum possible sen-
tences,*[11] and that at the sentencing hearing he was
not given an adequate opportunity to *explain* his
prior drug-related conviction. Wright's due process
claim was *not based on the prosecutor's failure to
inform him before trial* of the most recent offenses
of the possibility of sentence enhancement.

This Court issued a peremptory order vacating
Wright's sentences, and remanded the case for
resentencing:

> The sentencing court improperly imposed double
> sentence pursuant to MCL 335.348; MSA
> 18.1070(48). *Oyler v Boles,* 368 US 448; 82 S Ct
> 501; 7 L Ed 2d 446 (1962). See MCL 769.10; MSA
> 28.1082, as amended by 1978 PA 77.

In *Oyler v Boles,* cited by this Court in *Wright,*
the United States Supreme Court said that "a
defendant must receive reasonable notice *and* an
opportunity to be *heard* relative to [a] recidivist
charge," but that "due process does *not* require
that notice be given prior to the trial on the
substantive offense."[12]

---

[10] The Court of Appeals had affirmed Wright's sentence on the basis
of *People v McFadden,* 73 Mich App 232; 251 NW2d 297 (1977).
There, the Court of Appeals held that a procedure set forth in the
habitual offender provisions of the Code of Criminal Procedure, MCL
769.13; MSA 28.1085, did not apply to sentence enhancement under
the Controlled Substances Act. But see *People v Stout,* 116 Mich App
726; 323 NW2d 532 (1982).

[11] See n 9.

[12] *Oyler, supra,* p 452 (emphasis added).

At the sentencing hearing in *Wright,* the trial court elicited an
acknowledgment from Wright that he had previously pled guilty to a
drug-related offense. The court then informed Wright, apparently for
the first time, that he would be sentenced pursuant to the repeat
offender provision of the Controlled Substances Act:

The majority suggests that the reference to *Oyler* in *Wright* is evidence that this Court decided *Wright* on the basis of a mistaken belief that the Due Process Clause required notice of the possibility of sentence enhancement *before trial of the current offense,* and that *Wright* was therefore wrongly decided.[13]

The suggestion that this Court in *Wright* misunderstood the United States Supreme Court's ruling in *Oyler* is unsupported by the language of the order in *Wright*[14] and (see n 11 and the accompanying text) by the contentions of the parties. There is evidence that the Court understood the applicable law.

B

The Controlled Substances Act was repealed in 1978 and the Public Health Code was simultane-

_____

Any person convicted of a second or subsequent offense under this act may be imprisoned for a term up to twice the term otherwise authorized or fined an amount up to twice that otherwise authorized, or both. [1971 PA 196, MCL 335.348(1); MSA 18.1070(48)(1).]

Oyler was notified *before* the sentencing hearing that the prosecutor was filing a supplemental information charging him as an habitual offender. Wright received no notification before the sentencing hearing was under way. Wright did not, however, as noted above, predicate his due process claim on the prosecutor's failure to provide earlier notice.

[13] See *ante,* p 249, n 34.

The majority also suggests that the reference to *Wright* in *People v Urynowicz,* 412 Mich 137, 143; 312 NW2d 625 (1981) (per curiam), is further evidence of this Court's misunderstanding of the United States Supreme Court's decisions under the Due Process Clause. See *ante,* p 250. That assertion is discussed in the text accompanying ns 64-69.

[14] The Court's order refers generally to improper sentencing. It does not mention the failure to give pretrial notice of the possibility of sentence enhancement as the basis for the conclusion that the sentence was improper. The notice in *Wright* may well, however, have been inadequate under *Oyler.* See n 12.

ously enacted. The controlled substances article[15] of the Public Health Code does not specify procedures to be followed when the prosecutor seeks sentence enhancement.

The procedural requirements for sentence enhancement under the new law were first addressed in *People v Stout,* 116 Mich App 726; 323 NW2d 532 (1982). Stout was charged with possession of less than 50 grams of cocaine,[16] and possession of marihuana.[17] The prosecutor filed a supplemental information charging Stout under the habitual offender provisions of the Code of Criminal Procedure.[18] Stout was convicted as charged. The trial court dismissed the supplemental information, and sentenced Stout for the cocaine conviction pursuant to the repeat offender provision of the controlled substances article.[19]

Stout argued on appeal that his sentence should be vacated because he was not given notice of the repeat offender charge and because there was no hearing or trial concerning his prior drug-related convictions. The Court of Appeals agreed. Relying primarily on this Court's opinion in *People v Urynowicz,* 412 Mich 137; 312 NW2d 625 (1981) (per curiam),[20] the Court of Appeals said:

---

[15] 1978 PA 368, art 7, MCL 333.7101 *et seq.*; MSA 14.15(7101) *et seq.*

[16] 1978 PA 368, MCL 333.7403(2)(a)(iv); MSA 14.15(7403)(2)(a)(iv).

[17] 1978 PA 368, MCL 333.7403(2)(d); MSA 14.15(7403)(2)(d).

[18] 1978 PA 77, MCL 769.10 *et seq.*; MSA 28.1082 *et seq.*
Two of the prior convictions on which the supplemental information was based were drug offenses.

[19] [A]n individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both. [1978 PA 368, MCL 333.7413(2); MSA 14.15(7413)(2).]

[20] In *Urynowicz,* the Court held that an enhanced sentence for a second or subsequent conviction of criminal sexual conduct could not be imposed unless the defendant was charged as a repeat offender. That case is discussed more fully in the text accompanying ns 57-69.

In our view . . . *Urynowicz* makes clear that a
subsequent drug offender's sentence may not be
enhanced unless the prior drug offense is charged
in either the information or a supplemental infor-
mation *and* the prosecutor proves that the defen-
dant is a recidivist drug offender. [*Stout, supra,* p
735. Emphasis in original.]

Since the trial court dismissed the supplemental
information charging Stout under the habitual
offender provisions of the Code of Criminal Proce-
dure, and the prosecutor had not proved Stout's
prior drug-related convictions, the Court of Ap-
peals held that sentence enhancement was im-
proper.[21]

This Court has twice vacated sentences en-
hanced under the controlled substances article
because the defendant was not charged as a second
or subsequent offender. *People v Lester,* 417 Mich
927; 330 NW2d 854 (1983); *People v Cobb,* 422
Mich 901; 367 NW2d 335 (1985). In these cases,
unlike *Wright, supra,* the Court's orders mention
the prosecutor's failure to charge the defendant as
a repeat offender as the basis for holding that
sentence enhancement was improper.[22]

II

The Court's decisions applying the sentence en-
hancement provisions for repeat drug offenders are

[21] The majority cites *People v McFadden,* n 10 *supra,* see *ante,* p
249, n 34. There, the Court of Appeals said that the procedures set
forth in the habitual offender provisions of the Code of Criminal
Procedure did not apply to sentence enhancement under the former
Controlled Substances Act. The Court of Appeals in *Stout* concluded
that *McFadden* was overruled by this Court's decision in *Urynowicz.*
See *Stout, supra,* p 734.

[22] The Court's orders in *Lester* and *Cobb* did not cite the United
States Supreme Court's decision in *Oyler,* but relied instead on
decisions of this Court and the Court of Appeals. In *Lester,* the Court
cited *Urynowicz* and *Stout.* In *Cobb,* the Court cited only *Urynowicz.*

in a long line of decisions of this Court in which
the prosecutor has *always* been required—absent
unusual circumstances not present in the instant
case[23]—to notify the defendant before trial of the
current offense that, if he is convicted, he will be
subject to sentence enhancement on the basis of a
prior conviction. The Court has imposed this re-
quirement without regard to whether a particular
statute that authorizes sentence enhancement
specifies the procedures to be followed when the
prosecutor seeks an enhanced sentence.

A

The Michigan liquor law authorized sentence
enhancement for a second or subsequent convic-
tion without specifying the procedures to be fol-
lowed when the prosecutor sought sentence en-
hancement.

1

In *People v Ancksornby,* 231 Mich 271; 203 NW
864 (1925), the defendant was charged with unlaw-
ful possession of intoxicating liquor and with sell-
ing and furnishing as a first offender. Ancksornby
pled guilty to the information and, on the basis of
an alleged post-plea acknowledgment of a prior
conviction under the liquor law, the trial court
imposed an enhanced sentence.[24]

---

[23] See n 3.

[24] When *Ancksornby* was decided, the sentencing provision of the
liquor law read:

   Any person, who . . . shall violate any of the provisions of
   this act . . . shall be deemed guilty of a felony, and upon
   conviction therof be sentenced to pay a fine of not more than
   one thousand dollars and the costs of prosecution, or to impris-
   onment in the State Prison, Michigan Reformatory, or the
   Detroit House of Correction for a period of not less than six

Ancksornby appealed on the ground that an enhanced sentence could not be imposed because the prosecutor had not charged him as a second offender. *The prosecutor confessed error.*[25] This Court held that Ancksornby's sentence was excessive and illegal:

> The trial judge was in error. He sentenced the defendant for an offense of which he had not been convicted. The statute provides an increased punishment for a second or subsequent offense, but it must be charged as such in the information. That was not done in this case. [*Id.,* p 272.]

In *People v McDonald,* 233 Mich 98; 206 NW 516 (1925), the defendant was charged in the complaint and the information with unlawful possession of intoxicating liquor as a second offense. McDonald was tried, convicted and sentenced accordingly. At the preliminary examination, how-

months nor more than one year, or by imprisonment in the county jail for not less than thirty days, nor more than one year, or by both fine and imprisonment in the discretion of the court, and for every second and subsequent offense, so committed, . . . he shall, upon conviction thereof, be sentenced to imprisonment in any penal institution of this State for a term of not less than six months nor more than two years, and in addition thereto the court may impose a fine not to exceed one thousand dollars. [1919 PA (Ex Sess) 3.]

[25] The brief of plaintiff-appellee stated:

> Where the punishment provided by statute for a second offense is greater than that for a first offense, *the authorities are unanimous that the information or indictment should specifically aver that the crime charged is a second offense.*
>
>           *    *    *
>
> The charge was of a first offense. The sentence was greater than that allowed by law for a first offense. We concede, therefore, that the case should be reversed, and the cause remanded to the Superior Court for a proper sentence . . . . [Emphasis added.]

ever, the prosecutor did not offer evidence concerning McDonald's prior conviction.

The Court said that "[t]he information must contain an averment of former conviction . . . to justify a conviction and sentence therefor."[26] Although the former conviction was alleged in the information, "[a]s there was no proof of a former conviction submitted on the examination had, the averment thereof should have been stricken from the information and the objection of the defendant to the introduction [at the trial] of proof thereunder sustained."[27] *McDonald* was followed in *People v Van Vorce,* 240 Mich 75, 78; 215 NW 5 (1927).

2

Referring to *Ancksornby, McDonald,* and *Van Vorce,* the majority says that the "better construction" of those decisions is that "the Court construed the legislation in question as necessarily requiring a separate information filed to provide the opportunity for a preliminary examination for the defendant and to provide the circuit court with jurisdiction."[28] The majority also appears to suggest that a first offense was a misdemeanor, while a second or subsequent offense was a felony, and that the distinction is somehow significant.[29]

The majority's attempt to distinguish *Anck-*

[26] *Id.,* pp 100-101. In support of its holding, the Court cited, inter alia, three Michigan decisions: *People v Buck,* 109 Mich 687; 67 NW 982 (1896), *People v Butler,* 122 Mich 35; 80 NW 883 (1899), and *People v Campbell,* 173 Mich 381; 139 NW 24 (1912).

[27] *Id.,* pp 106-107.

[28] *Ante,* p 247, n 31.

[29] See *ante,* p 247, n 31 ("we find it highly doubtful that the Legislature . . . relied on liquor law cases from the mid-1920's to require separate charges in the present cases, which involve sentence enhancement and not a separate felony charge as found in the liquor law cases cited by the dissent").

*sornby, McDonald,* and *Van Vorce* is unpersuasive. The assertion that the prosecutor was required to file a separate information to provide the defendant with an opportunity for a preliminary examination ignores that when the Court decided those cases, a defendant who was accused of violating the liquor law was entitled to a preliminary examination and was subject to circuit court jurisdiction *without regard* to whether he was charged as a first or repeat offender.[30]

ʹ The majority is again incorrect when it asserts that in the liquor law cases a first offense was a misdemeanor while a second or subsequent offense was a felony. When the liquor law was initially enacted, a first offense was indeed a misdemeanor.[31] By the time the Court decided *Ancksornby, McDonald,* and *Van Vorce,* however, the Legislature had amended the liquor law to make a first offense a felony.[32] In any event, the misdemeanor/felony distinction—now determinative of whether a preliminary examination is required[33] and the jurisdictions of the district and circuit courts[34]—

---

[30] A preliminary examination was then required whenever the complaint and warrant alleged the commission of an offense "not cognizable by a justice of the peace." 1846 Rev Stat tit XXXI, ch 163, § 13, 1915 CL 15677. (A preliminary examination is *now* required whenever the complaint and warrant allege the commission of a "felony." See 1974 PA 63, MCL 766.4; MSA 28.922.) A justice of the peace had jurisdiction over certain statutorily enumerated offenses not here relevant and over "all other offenses punishable by fine not exceeding one hundred dollars, or punishable by imprisonment in the county jail not exceeding three months . . . ." 1899 PA 189, 1915 CL 15769. When the Court decided *Ancksornby, McDonald,* and *Van Vorce,* a first offense under the liquor law was punishable by a fine of one thousand dollars or imprisonment in a state or county facility for one year. See 1919 PA (Ex Sess) 3 (quoted in n 24).

[31] See 1917 PA 338, § 51.

[32] 1919 PA 53, amending 1917 PA 338. The penalty provision was further amended by 1919 PA (Ex Sess) 3 (quoted in n 24).

[33] See MCL 766.4; MSA 28.922.

[34] See MCL 600.8311(a); MSA 27A.8311(a).

was not determinative when the Court decided those cases.[35]

B

Another statutory scheme that authorizes sentence enhancement for a second or subsequent conviction without specifying the procedures to be followed when the prosecutor seeks sentence enhancement concerns driving under the influence of alcohol.

1

The Attorney General issued an opinion in 1940 concerning the proper practice when prosecuting a person who had previously been convicted of driving under the influence of alcohol.[36] The Attorney General said:

> We feel that the proper procedure to be followed in cases of this nature is to *charge* the offender with a second or subsequent offense *in the original*

---

[35] Although a "misdemeanor" when the liquor law was initially enacted, a first offense was not cognizable by a justice of the peace—and the defendant was entitled to a preliminary examination—because the maximum penalty for a first offense was a fine of two hundred dollars or imprisonment in the county jail for six months. 1917 PA 338, § 51. See n 31 and the accompanying text.

[36] At the time, the applicable sentencing provision read:

> Every person who is convicted of a violation of section 3 of this act relating to . . . driving or permitting driving while under the influence of intoxicating liquor . . . shall be punished by imprisonment in the county jail or Detroit house of correction for not more than 90 days or by a fine of not less than $50.00 nor more than $100.00 or both such fine and imprisonment in the discretion of the court, together with costs of the prosecution. On a second or subsequent conviction he shall be guilty of a misdemeanor and punished by imprisonment for not more than 1 year, and, in the discretion of the court, a fine of not more than $1,000.00. [1939 PA 318.]

*complaint, have a preliminary examination* before
the proper magistrate, and in the event that the
magistrate finds probable cause, have the accused
bound over to the circuit court to stand trial. The
*information would charge* a second or subsequent
offense so as to apprize the accused and the court
of the fact that such a second offense is charged.
[OAG, 1939-1940, p 427 (February 29, 1940).[37] Em-
phasis added.]

In *People v Bosca,* 25 Mich App 455; 181 NW2d
678 (1970), the information charged the defendant
as a second offender under the drunk driving law.[38]
Bosca moved to quash the information on the basis
that it was defective because it alleged both the
current and the prior offense. The trial court
denied Bosca's motion. The Court of Appeals af-
firmed, holding that "before a defendant's punish-
ment for the current offense can be enlarged, the
earlier conviction must be charged and proved."[39]

[37] The Attorney General's opinion was based both on the effect of
the availability of an enhanced sentence on the respective jurisdiction
of the circuit court and justice of the peace and on established
principles of the criminal law:

If the original complaint did not contain an allegation charg-
ing a second offense then the offense would be cognizable by a
justice of the peace and not a circuit court misdemeanor.

It has been generally held that, in order to subject the
accused to the enhanced punishment for a second or subse-
quent offense, or as an habitual criminal, it is necessary to
allege in the indictment the fact of a prior conviction or
convictions. [*Id.* Citations omitted.]

The Attorney General cited, inter alia, *Ancksornby* and *McDonald,*
*supra,* and *Buck, Butler,* and *Campbell,* n 26 *supra.*

[38] With respect to first and second offenses, the language of the
sentencing provision, 1958 PA 113, MCL 257.625; MSA 9.2325, was
substantially identical to the language of the statutory predecessor,
1939 PA 318 (quoted in n 36).

[39] *Id.,* p 458.

The Court of Appeals also held that the prosecutor would not be
allowed to introduce evidence of Bosca's prior conviction unless the
jury first returned a guilty verdict on the charged offense.

The Court of Appeals has followed *Bosca*,[40] and this Court has expressly approved its holding and rationale.[41]

2

The majority cites *People v Mellor*, 302 Mich 537; 5 NW2d 455 (1942), a case involving a second conviction of drunk driving, in support of its argument that a prosecutor is not required to charge a prior conviction because an earlier conviction is merely a factor for the judge to consider in sentencing and not an element of a new charge.[42] The defendant in *Mellor* was charged,[43] convicted, and sentenced[44] as a second offender. On appeal, Mellor argued that the prior conviction and the current

[40] See, for example, *People v Leonowicz*, 134 Mich App 152, 155; 350 NW2d 770 (1984), and *People v Hutchinson*, 35 Mich App 128, 131; 192 NW2d 395 (1971).

[41] See *People v Urynowicz, supra*, pp 143-144 ("[The Court of Appeals] captured the essence of this Court's earlier decisions when [it stated] in *Bosca* that 'before a defendant's punishment for the current offense can be enlarged, the earlier conviction must be charged and proved' ").

[42] *Ante*, pp 246-247.

[43] The information read in pertinent part:

[H]e, the said Henry Mellor, having been heretofore, to-wit, on the 21st day of January, A.D. 1935, convicted in the Recorder's Court of the City of Detroit, Traffic and Ordinance Division, of the offense of operating a motor vehicle while under the influence of intoxicating liquor, and the offense heretofore set forth constitutes a second or subsequent offense; and the said Henry Mellor is so herein charged as a second or subsequent offender.

[44] The transcript of the sentencing hearing read in pertinent part:

The Court: This is a case though of second offense. Sometimes the court feels that if the first offense is not too serious it entitles him to some consideration, but hardly on the second offense. One hundred dollars costs and ninety days and license revoked for one year.

offense should have been set forth in *separate counts* of the information.[45]

The Court rejected Mellor's contention and said that it was not error to allege both the current offense and the prior conviction in the *same count.*[46] The Court did *not* say that there was no need to charge a defendant as a second offender—Mellor had been so charged.[47]

3

The majority appears to attempt to distinguish drunk driving from the case at hand on the basis that a prior conviction is an "element" of a repeat drunk driving offense because a first offense is a misdemeanor whereas a subsequent offense may be a felony.[48]

---

[45] See *People v Mellor,* Brief for Henry Mellor, Appellant, pp 15-16.

[46] Nor do we think the information is faulty because it does not contain two counts. The prior offense is not an element of the instant offense. It merely applies to punishment after conviction. [*Mellor, supra,* p 540.]

[47] To the extent the majority suggests that *Mellor* supports its holding that the prosecutor is not required to charge the defendant as a repeat offender (*ante,* pp 246-247), it is clearly mistaken. See *Bosca, supra,* pp 457-458, where the Court of Appeals explained:

The [*Mellor*] court's statements . . . that the "former conviction was merely an additional fact or circumstance to be considered in imposing a severer penalty for the second conviction" and that "the prior offense is not an element of the instant offense," cannot properly be read as negating the need both to charge and prove . . . the earlier conviction before the punishment for the currently charged offense can be enhanced. The currently charged offense can in truth be charged and proved without reference to the earlier conviction. In that sense the earlier conviction is not, as said in *Mellor,* an element of the "instant [or current] offense." But, nevertheless, before a defendant's punishment for the current offense can be enlarged, the earlier conviction must be charged and proved.

This Court approved the *Bosca* Court's analysis in *People v Urynowicz, supra,* pp 143-144 (quoted in text accompanying n 63).

[48] By contrast, when a prior conviction is an element of the

When the Court decided *Mellor* and the Attorney General issued his opinion, a second or subsequent conviction of drunk driving was a misdemeanor.[49] When the Court of Appeals decided *Bosca,* a second conviction was a misdemeanor and a third or subsequent conviction within a ten-year period was, indeed, a felony.[50] Thus, when the defendant in *Bosca* was charged as a second offender,[51] he was charged with committing a misdemeanor, not a felony. The premise of the majority's analysis—that a subsequent offense is a felony and the prior offense was a misdemeanor—is thus factually incorrect. In all events, the prior conviction is no more an "element" when it constitutes a misdemeanor than when it constitutes a felony.[52]

The majority also says that the "better construction" of the drunk driving laws is that "the Court construed the legislation in question as necessarily requiring a separate information filed to provide the opportunity for a preliminary examination for the defendant and to provide the circuit court with

charge, the earlier offense must be charged in the information when, for example, an individual charged for a second or subsequent offense of driving under the influence of liquor is found guilty of a felony. While the offense is a misdemeanor, a third or subsequent offender can be charged with a felony. MCL 257.625; MSA 9.2325. However, the defendant must be charged as a second, or subsequent offender, which is an element of the underlying felony charge. [*Ante,* p 247, n 31.]

[49] See 1939 PA 318 (quoted in n 36).

[50] See 1958 PA 113, MCL 257.625; MSA 9.2325.

[51] See *Bosca, supra,* p 456.

[52] Even if the subsequent offense had been a felony, the majority's assertion that a prior conviction is an "element" of the current offense does not distinguish drunk driving. In drunk driving and in the instant case, proof of the prior conviction is not necessary for conviction of the current offense; the prior conviction is relevant only with respect to the sentence for the most recent offense. To the extent the prior conviction is an "element" of the current offense, the prior conviction is no more an "element" when it constitutes a misdemeanor than when it constitutes a felony.

jurisdiction."[53] I acknowledge that the difference in the maximum sentence between a first and subsequent conviction of drunk driving is determinative of a defendant's entitlement to a preliminary examination and of the jurisdictions of the justice of the peace and circuit court.

The jurisdictional significance of the availability of an enhanced sentence was indeed one basis for the Attorney General's opinion in 1940.[54] It was not, however, the only basis for the Attorney General's opinion.[55] Nor was it a basis of the Court of Appeals decision in *Bosca*.[56]

C

Still another statutory scheme that authorizes sentence enhancement for a second or subsequent conviction without specifying the procedures to be followed when the prosecutor seeks sentence enhancement is found in the provisions of the Penal Code concerning criminal sexual conduct.

1

This Court construed those provisions in *People v Urynowicz*, 412 Mich 137; 312 NW2d 625 (1981) (per curiam). The information charged Urynowicz

[53] *Ante,* p 247, n 31.

[54] See n 37.

[55] The Attorney General also recognized the importance of notifying the defendant that he was being charged as a repeat offender. See n 37.

[56] See *Bosca, supra,* p 458, n 3, where the Court of Appeals explained:

Without such notice a defendant would not know whether the punishment which he faces upon a conviction is that which may be meted out to first offenders (90 days and $100) or second offenders (1 year and $1,000). A defendant needs this information, not only to decide whether it is in his interest to plead guilty but also in deciding whether to engage an attorney and the vigor of the defense which he may wish to put forth.

with first-degree criminal sexual conduct.[57] He pled
guilty in exchange for the dismissal of a supple-
mental information that had been filed under the
habitual offender provisions of the Code of Crimi-
nal Procedure.[58] The basis of the habitual offender
charge was a prior conviction of gross indecency.
That conviction also would have justified the im-
position of a mandatory five-year minimum sen-
tence under the criminal sexual conduct provisions
of the Penal Code, but Urynowicz was not charged
under the provision.[59]

When taking Urynowicz' plea, the trial court
told him that the maximum punishment for first-
degree criminal sexual conduct was life imprison-
ment, but did not inform him of the mandatory
five-year minimum sentence for a second convic-
tion of criminal sexual conduct. Urynowicz was
sentenced to life imprisonment.

The Court of Appeals reversed Urynowicz' con-
viction on the basis of the trial court's failure to
inform Urynowicz of the mandatory minimum
sentence.[60] *The prosecutor argued that the provi-
sion requiring a five-year minimum sentence was
not operative in Urynowicz' sentencing[61] because*

---

[57] 1974 PA 266, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). First-
degree criminal sexual conduct was a "felony punishable by imprison-
ment in the state prison for life or for any term of years." MCL
750.520b(2); MSA 28.788(2)(2).

[58] 1978 PA 77, MCL 769.10(1)(b); MSA 28.1082(1)(b).

[59] Under MCL 750.520f(1); MSA 28.788(6)(1), where the defendant
has a previous conviction of a sexual offense, the sentence for the
second or subsequent offense "shall provide for a mandatory mini-
mum sentence of at least 5 years." See also MCL 750.520f(2); MSA
28.788(6)(2) (gross indecency is included within the category of prior
sexual offenses requiring a five-year minimum sentence).

[60] Before accepting Urynowicz' guilty plea, the trial court was
required to inform Urynowicz of "the mandatory minimum prison
sentence, if any, for the offense." GCR 1963, 785.7(1)(d).

[61] Although the trial court was not obligated to impose a five-year
sentence, it could nonetheless impose such a sentence because a first
conviction of first-degree criminal sexual conduct was punishable by
life imprisonment. See n 57.

*he had not been charged under that provision.*

*This Court agreed with the prosecutor's analysis.* The Court first observed that "[w]e have said in the past that second-offender provisions with mandatory sentence enhancement require that the information must charge the earlier conviction before a defendant may be liable for the additional punishment."[62] After reviewing the decisions of this Court and the Court of Appeals, the *Urynowicz* Court concluded:

> We believe that [the Court of Appeals] captured the essence of this Court's earlier decisions when [it said] in *Bosca* that "before a defendant's punishment for the current offense can be enlarged, the earlier conviction must be charged and proved." This defendant was not charged under § 520f. Consequently, there was no mandatory minimum of which advice . . . was required. [*Id.,* pp 143-144 (quoting *Bosca, supra,* p 458).][63]

2

The majority would jettison *Urynowicz* on the basis that "the Court erred in *Urynowicz* in concluding due process requires a separate proceeding and proof before enhancing the sentence of a second offender."[64] The alleged flaw in *Urynowicz* is the Court's reference to *Wright.*[65] The majority

---

[62] *Id.,* pp 140-141.

[63] The majority cites *People v Bailey,* 103 Mich App 619; 302 NW2d 924 (1981) (per curiam). See *ante,* p 249, n 35. There, the Court of Appeals rejected Bailey's argument that because he had not been charged as a repeat offender, the trial court's imposition of a five-year minimum sentence was improper.

The holding in *Bailey* is in direct conflict with this Court's *subsequent* holding in *Urynowicz.*

[64] *Ante,* p 250.

[65] In *Urynowicz, supra,* p 143, the Court said:

> In *People v Wright,* 405 Mich 832 (1979), the Court examined

says that the reference to *Wright* "implied that due process required a separate proceeding whenever a defendant's sentence is increased on the basis of prior offenses."[66]

The majority's contention that *Urynowicz* was wrongly decided is predicated on two assumptions: 1) this Court decided *Wright* on the basis of an incorrect reading of the United States Supreme Court's decision in *Oyler*; and 2) this Court compounded its error by mentioning *Wright* in *Urynowicz*. As previously discussed, however, *Wright* was not decided on the basis of a mistaken belief that the Due Process Clause of the Fourteenth Amendment always requires notice of the possibility of sentence enhancement before trial on the most recent offense.[67] Further, the decision in *Urynowicz* contains an accurate description of the United States Supreme Court's holding in *Oyler*,[68] and of this Court's order in *Wright*.

Even if the reference to *Wright* in *Urynowicz* did evidence a mistaken belief that the Due Process Clause of the Fourteenth Amendment was

the sentence enhancement provision of the Controlled Substances Act. MCL 335.348; MSA 18.1070(48). The defendant had been charged only with delivery of cocaine and conspiracy to deliver cocaine, but he was sentenced as a second offender to twice the term of imprisonment authorized. The Court said that doubling the sentence was improper and cited *Oyler v Boles*, 368 US 448; 82 S Ct 501; 7 L Ed 2d 446 (1962), in which the United States Supreme Court required, as a matter of due process, that a defendant receive reasonable notice and an opportunity to be heard on a recidivist charge.

[66] *Ante*, p 250.

[67] See § (I)(A).

[68] Compare *Urynowicz, supra,* p 143 ("The [*Wright*] Court . . . cited *Oyler v Boles* in which the United States Supreme Court required, as a matter of due process, that a defendant receive reasonable notice and an opportunity to be heard on a recidivist charge") (citation omitted), with *Oyler, supra,* p 452 ("a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense").

implicated on the facts of *Urynowicz*—which it did not—that "error" would not be an adequate basis on which to overrule *Urynowicz*. It is incorrect to suggest that the Due Process Clause was the basis of decision in *Urynowicz*. The Court discussed six different decisions.[69] While *Wright* was based on the United States Constitution, the other five decisions relied on the statutory and common law of this state.

### III

In requiring the prosecutor to charge the defendant as a second or subsequent offender when seeking an enhanced sentence, this Court has followed the rule advocated by most legal authorities and adopted in most jurisdictions.

### A

The principle that an accused, subject to a heavier penalty because of his recidivism, must be charged as a recidivist resounds in legal treatises and encyclopedias:[70]

> [T]he indictment must set out every element of crime which enters into the punishment, since otherwise it does not set out fully the

---

[69] *People v McDonald* (see ns 26-27 and the accompanying text), *People v Butler* (see n 26), *People v Mellor* (see ns 42-47 and the accompanying text), *People v Miller,* 357 Mich 400; 98 NW2d 524 (1959), *People v Bosca* (see ns 38-41 and the accompanying text), and *People v Wright* (see ns 7-14 and the accompanying text).

[70] See *Evans v State,* 150 Ind 651, 653-654; 50 NE 820 (1898):

> The doctrine that when a statute imposes a greater punishment upon second and subsequent convictions of an offense, that the former conviction must be alleged in the indictment and proved at the trial, or the same can only be punished as a first offense, is sustained by the great weight of the authorities.

offense . . . . [Bishop, Statutory Crimes, § 167, p
184.]

[U]nder ordinary forms of the statutory provi-
sion, if the offence is the second or third, and by
reason thereof the punishment is to be made
heavier, this fact must appear in the indictment;
because by the rules of criminal pleading, every
particular which makes heavier the punishment to
be inflicted must be set out. [Bishop, Criminal Law
(9th ed), § 961, pp 710-711.]

The indictment must allege every fact and modi-
fication of fact legally essential to the punishment
to be inflicted. [I Bishop, New Criminal Procedure
(2d ed), § 81.]

The result is that in every case, with no excep-
tion, the common law requires each individual
thing which itself or a statute has made in that
wrongful aggregation out of which the punishment
proceeds, to be alleged in the indictment. [*Id.*,
§ 84.]

In most jurisdictions, by statute, a person who
has been convicted of certain offenses, like larceny
or the unlawful sale of intoxicating liquors or
drunkenness, for instance, is rendered liable to an
increased punishment for a second or third offense.
The previous conviction enters into the second or
third offense to the extent of aggravating it, and
increasing the punishment; and, where it is sought
to impose the greater penalty for a second or third
offense, the previous conviction or convictions, like
every other material fact, must be distinctly al-
leged in the indictment. [Clark, Criminal Proce-
dure, § 84, p 204.]

There are many cases in which a second convic-
tion changes the grade of the offense or authorizes
the infliction of an increased punishment, and
where this is the case the former conviction enters
as an element into the new offense and should be
alleged as a necessary part of the description and
character of the crime intended to be punished
directly and not by recital. [Joyce, Indictments (2d
ed), § 449, p 516.]

So a sentence to an increased penalty, imposed
by statute upon a second conviction, cannot be
rendered, except upon an allegation in the indict-
ment, and upon proof, of a prior conviction. [Joyce,
*supra,* p 518.]

Where a second conviction changes the grade of
an offense, or authorizes a higher penalty than
could otherwise be imposed, the former conviction
enters as an element into the new offense, and
must be alleged and proved as a necessary part of
the description and character of the crime in-
tended to be punished. [8 Ruling Case Law, § 293,
p 276.]

A person accused of crime as a recidivist is
entitled to be informed by indictment or informa-
tion that he is being charged as such. [39 Am Jur
2d, Habitual Criminals and Subsequent Offenders,
§ 20, p 324.]

In some jurisdictions statutes have been enacted
which, without setting up more than one offense or
more than one degree of the same offense, permit
the infliction of a heavier sentence when it is
shown that the accused committed the crime in
question under circumstances showing aggrava-
tion. The decisions construing these statutes have

generally taken the position that in order to jus-
tify the imposition of the higher sentence, it is
necessary that the matter of aggravation relied
upon as calling for such sentence be charged in
the indictment or complaint. [4 Anderson, Whar-
ton's Criminal Law & Procedure, § 1788, p 610.]


An indictment under which it is sought to im-
pose a higher penalty by reason of a previous
conviction must allege the fact of such conviction.
[1 McClain, Criminal Law, § 28, p 28.]

B

In numerous cases decided in a host of other
states, courts have held that repeat offenders,
subject to heavier penalties because of their recidi-
vism, must be charged as second or subsequent
offenders[71] although the statutes, analogous to the

[71] In *State v Edinger,* 331 NW2d 553, 554 (ND, 1983), the Supreme
Court of North Dakota observed:

The weight of authority supports the view that, with no
statutes to the contrary, in order to subject the defendant to an
enhanced punishment for a second or subsequent offense, it is
necessary to allege the prior conviction in the complaint or
information.

Accord *State v Ruble,* 77 ND 79, 80; 40 NW2d 794 (1950), *State v
Cameron,* 126 Vt 244, 246-247; 227 A2d 276 (1967), *In re Harris,* 80
Cal App 2d 173, 176-177; 181 P2d 433 (1947), and *Haffke v State,* 149
Neb 83, 88-89; 30 NW2d 462 (1948).

In *People v Ratner,* 67 Cal App 2d Supp 902, 903-904; 153 P2d 790
(1944), the court, quoting *Massey v United States,* 281 F 293, 297 (CA
8, 1922), noted:

"It is the established rule, under such statutes, unless the
statute designates a different mode of procedure, that, if the
prosecutor desires to invoke the severer punishment provided
as to second or subsequent offenders, the indictment or infor-
mation must allege the fact of the prior conviction, and the
allegation of such conviction must be proved in the trial to the
jury." Some forty-five authorities were cited in support of the
statement and more may be found in [*State v Scheminisky,* 31

one before this Court, do not specify that an accused must be charged as a recidivist.

Many of these cases, like the instant case, involve sentence enhancement provisions contained in drug offense statutes. Louisiana courts have required that prosecutors seeking heavier sentences against repeat offenders of a statute criminalizing possession of marijuana,[72] include in the bill of information an allegation that the crime is a multiple offense. See *State v Bouzigard,* 286 So 2d 633 (La, 1973).[73]

In the case of a defendant charged with distribution under the Controlled Dangerous Substances Act, the Louisiana court held that a defendant not charged as a second offender for distributing ethchlorvynol could not be sentenced as such.[74]

In *Sparkman v State Prison Custodian,* 154 Fla 688; 16 So 2d 772 (1944), the Florida Supreme Court, citing numerous Florida and other state cases[75] where it was held that the fact of prior conviction(s) must be alleged to subject an accused to enhanced penalties, held that the general rule

Idaho 504, 507-508; 174 P 611 (1918), and the annotations in 58 ALR 64, 82 ALR 366, 116 ALR 229, 132 ALR 107, and 139 ALR 689].

[72] LSA-RS 40:966.

[73] In accord *State v Keys,* 328 So 2d 154 (La, 1976); *State v Cannon,* 409 So 2d 568 (La, 1982); *State v Jenkins,* 451 So 2d 1142 (La App, 1984); *State v Franklin,* 449 So 2d 63 (La App, 1984).

[74] *State v Murray,* 357 So 2d 1121, 1124 (La, 1978).

[75] Included among those cases was *People v Brown,* 253 Mich 537; 235 NW 245 (1931). In *Brown,* this Court held that the charge of an habitual offender must include the fact of his previous convictions. The statute at issue was an habitual offender statute (providing increased penalties for subsequent felonies) rather than a sentence enhancement provision (providing increased penalties for subsequent violations of a particular statute).

The citation in *Sparkman,* a sentence enhancement case, of *Brown,* an habitual offender case, bespeaks the court's view (a view shared by many other states) that there is no distinction between the procedures applicable under these two statutory patterns.

applied as well to prosecutions under the Uniform Narcotic Drug Law.[76]

The defendant in *State v Loudermilk,* 221 Kan 157; 557 P2d 1229 (1976), contended that his prior convictions should not have been contained in the indictment charging him as a subsequent violator of the narcotics laws. The court disagreed, explaining:

> [W]e think the defendant was entitled to know, and to be specifically advised by the information of the specific offense with which he was charged and the seriousness thereof, including the class of felony of which he stood accused. The information before us recited the prior conviction in detail, and noted that the offense charged was a class B felony. This gave the defendant proper notice of the charge. [*Id.,* p 159.]

---

[76] *State v Fernandez,* 156 So 2d 400 (Fla App, 1963), is in accord.

This case is particularly noteworthy for its rejection of the argument, made by the majority in the instant case, that charging the previous conviction is only required where the sentence enhancement provision changes the nature of the crime from a misdemeanor to a felony. Explained the court:

> Admittedly the statute involved in the instant case differs from those statutes discussed in [*State v Curtis,* 152 So 2d 754 (Fla App, 1963)] in that under the Narcotic Drug Law both first and second offenses are felonies while under the lottery laws a second offense changes the character of the crime from misdemeanor to felony. However, the fact that the allegation of a previous conviction was determinative of the proper jurisdiction in *Curtis* and is not so significant in this case does not preclude application of the rationale of the *Curtis* case to the instant case. [*Id.,* p 406.]

Other cases where courts have required that earlier convictions be charged under sentence enhancement provisions of the Uniform Drug Act include: *People v Hightower,* 414 Ill 537; 112 NE2d 126 (1953), cert den 346 US 875 (1953), app den 346 US 882 (1953), and *State v Holloway,* 144 Conn 295; 130 A2d 562 (1957).

See also *People v Breitweiser,* 44 Ill App 3d 284; 357 NE2d 890 (1976), where the court required that a defendant, subject to higher penalties under a sentence enhancement provision of the Cannabis Control Act, have been charged with his previous convictions.

Courts have often spoken to this issue in alcohol offense cases. In *Quintana v People,* 169 Colo 295; 455 P2d 210 (1969), Quintana was charged with drunk driving and, in a separate count, with a prior conviction of drunk driving within the last five years. The allegation of the prior conviction contained in count two subjected the defendant to a higher penalty under the Colorado drunk driving statute. The Supreme Court of Colorado, finding the indictment to be in proper form, said:

> A complaint charging the defendant with drunk driving under this statute and also with a second or subsequent conviction within five years, requires procedurally that each be the subject of a separate count. [*Id.,* p 298.][77]

In *Smith v State of Florida,* 75 Fla 468; 78 So 530 (1918), the defendant was charged with a violation of the beverage laws of that state. The Florida Supreme Court held that the defendant must be charged with prior offenses if it is intended that he be charged as a second offender. *Id.,* p 473.[78] Similarly, Kentucky courts have required that defendants subject to severer punishment under the sentence enhancement provision of the Prohibition Act be charged with the previous convictions.[79]

---

[77] In accord *Heinze v People,* 127 Colo 54; 253 P2d 596 (1953); *Nail v State,* 225 Ark 495; 283 SW2d 683 (1955); *State v Couture,* 151 Conn 213; 196 A2d 113 (1963); *Buchanan v State ex rel Morris,* 167 So 2d 43 (Fla App, 1964); *In re Sobieski,* 246 Ind 222; 204 NE2d 353 (1965). See also *Buchta v State,* 234 Ind 295; 126 NE2d 151 (1955), *State v Waller,* 167 Ind App 231; 339 NE2d 61 (1975), *State v Montgomery,* 250 La 326; 195 So 2d 285 (1967), *State v Gerald,* 250 La 759; 199 So 2d 536 (1967), *State v Neal,* 347 So 2d 1139 (La, 1977), *State v Bass,* 254 La 83; 222 So 2d 865 (1969), and *Smith v Dep't of Public Safety,* 254 So 2d 515 (La App, 1971).

[78] In accord *Norwood v Florida,* 80 Fla 613; 86 So 506 (1920); *Warren v State,* 74 So 2d 688 (Fla, 1954).

[79] See *Alford v Commonwealth,* 216 Ky 405; 287 SW 937 (1926);

Courts applied the same rule to various theft statutes containing sentence enhancement provisions. The vehicle theft statute at issue in *Studdard v State*, 225 Ga 410, 411; 169 SE2d 327 (1969), provided:

> "The indictment charging any offense under this section shall contain the same allegations as prior to the adoption of this section."[80]

The Georgia Supreme Court said:

> Prior to the adoption of such section, it had been consistently held that where the State sought to impose a greater penalty for an illegal act because of the defendant's alleged "incorrigible and dangerous character" resulting from prior convictions, such prior convictions must be alleged in the indictment . . . . [Citations omitted.] Such allegations are necessary to inform the defendant of the nature of the offense with which he is charged since they involve the penalty which may be invoked.[81]

Illinois cases have similarly so held with respect to

---

*Blanton v Commonwealth*, 210 Ky 571; 276 SW 533 (1925); *English v Commonwealth*, 216 Ky 608; 288 SW 320 (1926); *Beshears v Commonwealth*, 239 Ky 554; 39 SW2d 995 (1931); *Dunnington v Commonwealth*, 231 Ky 327; 21 SW2d 471 (1929).

See also *State v Briggs*, 94 Kan 92; 145 P 866 (1915), app dis 242 US 615 (1916), where the Supreme Court of Kansas applied the general rule to the recidivist provision in the Kansas Prohibitory Liquor Law.

[80] Ga Laws 1966, p 557, § 26-2603(C)(1).

[81] In accord *Elrod v Caldwell*, 232 Ga 876; 209 SE2d 207 (1974), and *Riggins v Stynchcombe*, 231 Ga 589; 203 SE2d 208 (1974). The court in this case posed and answered in the negative the following question: "But is it sufficient to indict an accused for one offense, convict him of the one offense charged, and then impose punishment at the second phase of the trial pursuant to recidivist statutes which permit maximum punishment greater than the maximum punishment for the individual offense for which the accused was indicted and convicted?"

sentence enhancement statutes contained in Illinois theft statutes.[82]

In cases focused on sundry other types of statutes, e.g., statutes prohibiting illegal cohabitation,[83] joyriding,[84] lotteries,[85] unlawful use of weapons,[86] pandering,[87] prostitution,[88] and insufficient fund checks,[89] courts have required that prosecutors seeking increased sentences, charge the accused with the prior conviction(s).

The majority departs from this long-settled and widely accepted rule.

C

Particularly relevant are cases in which this general rule was followed although the Legislature had enacted other sentence enhancement statutes containing explicit procedural safeguards.

In *Haffke v State,* 149 Neb 83; 30 NW2d 462 (1948), the Supreme Court of Nebraska was called upon to decide what procedures must be followed when imposing an enhanced sentence for second or subsequent convictions of driving under the influ-

[82] *People v Weaver,* 41 Ill 2d 434; 243 NE2d 245 (1968), cert den 395 US 959 (1969); *People v Ferrara,* 11 Ill App 2d 472; 250 NE2d 530 (1969), cert den 398 US 927 (1970); *People v Ramey,* 22 Ill App 3d 916; 317 NE2d 143 (1974); *People v Martin,* 97 Ill App 3d 704, 705; 423 NE2d 493 (1981).

See also *Evans v State,* n 70 *supra; Pickelsimer v State,* 440 So 2d 47 (Fla App, 1983).

[83] See *Hettle v State,* 144 Ark 564, 567; 222 SW 1066 (1920).

[84] See *Luna v Krutka,* 142 Colo 55, 56-57; 349 P2d 565 (1960).

[85] See *State v Curtis,* n 76 *supra.*

[86] See *People v Ostrand,* 35 Ill 2d 520; 221 NE2d 499 (1966), *People v Owens,* 37 Ill 2d 131; 225 NE2d 15 (1967), *People v Dixon,* 46 Ill 2d 502; 263 NE2d 876 (1970), and *Morgan v Commonwealth,* 170 Ky 400; 186 SW 132 (1916).

[87] See *People v Boykin,* 298 Ill 11, 21; 131 NE 133 (1921).

[88] See *State v Morgan,* 389 So 2d 364 (La, 1980).

[89] See *State v Salyer,* 196 Kan 32; 410 P2d 248 (1966).

ence of intoxicating liquor.[90] Although the applicable statute[91] was silent as to the procedures to be followed when imposing the more severe sentence, the Nebraska Habitual Criminal Act contained explicit procedural safeguards.[92] The *Haffke* court held that the recently amended procedural requirements in the Habitual Criminal Act were applicable to all situations "where punishment is sought under any statute defining one crime and providing for an enhanced penalty upon conviction of a second or subsequent offense." The court said:

> While the above statute by its terms applies only to the Habitual Criminal Act, yet it announces rules of practice and procedure that, as a matter of sound public policy, should apply to any statute which imposes the duty upon a court to inflict a greater punishment upon the repetition of an offense. [*Id.* at 95.]

Other cases where courts required prosecutors to charge defendants as repeat offenders under "procedurally silent" statutes even though habitual offender statutes in the jurisdictions expressly provided that defendants must be charged as habitual violators, include *State v McClay,* 146 Me 104; 78

[90] Although the precise issue in *Haffke* centered on the fact-finding role of the jury with respect to the allegation of prior conviction, the procedures adopted by the court included a requirement that the information contain an allegation of prior conviction. See *id.* at 94.

[91] Neb Rev Stat, § 39-727 (1943).

[92] 1947 Laws, ch 105, § 1, p 294. The revised statute provided, inter alia:

> Where punishment of an accused as an habitual criminal is sought, the facts with reference thereto must be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted, but the fact that the accused is charged with being an habitual criminal shall not be an issue upon the trial of the felony charged and shall not in any manner be disclosed to the jury.

A2d 347 (1951),[93] *People v Hightower,* 414 Ill 537; 112 NE2d 126 (1953),[94] *People v Ratner,* 67 Cal App 2d Supp 902; 153 P2d 790 (1944),[95] and *State v Waller,* 167 Ind App 231; 339 NE2d 61 (1975).[96]

[93] In *McClay,* the Supreme Judicial Court of Maine held that the complaint must allege a defendant's prior convictions to support an enhanced sentence for a second or subsequent conviction of driving under the influence of alcohol.

The applicable statute, Me Rev Stat, ch 19, § 121 (1944), was silent concerning procedural matters. See 146 Me 106-107 (quoting the text of the statute). At the time *McClay* was decided, Maine's habitual offender act conditioned the imposition of an enhanced sentence on an allegation of prior conviction. See *Jenness v State,* 144 Me 40; 64 A2d 184 (1949) (discussing the legislative history of the habitual offender act).

[94] In *Hightower,* the defendant was charged with dispensing narcotic drugs in violation of § 23 of the Uniform Narcotic Drug Act. Ill Rev Stat, ch 38, ¶¶ 192.1-192.28 (1951). Also included in the indictment was a charge that the defendant had a prior conviction.

Section 23 of the Uniform Narcotic Drug Act provided for a severer punishment on subsequent offenses and did not specify whether a defendant's previous convictions must be set forth in the indictment. The defendant objected to the inclusion of his prior convictions in the information. The court disagreed:

> We do not agree with defendant's contention that his prior conviction should have been deleted from the indictment. It is true that the Habitual Criminal Act of this State specifically provides that the fact of prior conviction and sentence in the penitentiary must be pleaded in the indictment for the present offense and that the Illinois Uniform Narcotic Drug Act contains no such provision. However, we are of the opinion that it is necessary to plead this fact to justify a conviction and sentence under the aggravated penalty clause. [414 Ill 544-545.]

[95] In *Ratner,* the court held that the defendant must be charged as a repeat offender to warrant imposition of an enhanced sentence for a second conviction of running a red light.

The applicable statute, Cal Vehicle Code, § 762 (1935), did not specify whether it was necessary to allege the defendant's prior conviction when seeking the more severe penalty. See 67 Cal App 2d Supp 903. At the time *Ratner* was decided, the California Penal Code expressly conditioned the availability of an enhanced sentence for habitual offenders on an allegation of prior conviction. See *In re Harris,* n 71 *supra,* pp 434-435 (quoting Cal Penal Code, § 3024).

[96] In *Waller,* the court held that the defendant's former conviction for driving under the influence had to be alleged and proved if the defendant was to be subject to more serious consequences as a result of his recidivism. In a footnote, the court said:

D

Many of the cases and authorities cited in the preceding sections predate the enactment of habitual offender provisions in this and other states.[97] Thus, the principle that a defendant may not be sentenced as a recidivist unless he was charged as a recidivist predates the enactment of habitual offender statutes. This principle was developed by the courts over the course of several decades in applying procedurally silent sentence enhancement provisions.

IV

I agree with the majority[98] that the Legislature's intent should be considered in deciding whether the prosecutor must charge a defendant as a repeat offender.

A

A statute should be construed to avoid absurd or

Although [*Barr v State,* 205 Ind 481; 187 NE 259 (1933)] notes that the habitual criminal statutes (then Ind Ann Stat §§ 2339 and 2340 [Burns 1926], now §§ 9-2207 and 9-2208) specifically require the prior convictions to be pleaded and proved, it cites and quotes opinions by English and American courts (including *Evans v State,* 150 Ind 651; 50 NE 820 [1898]) which require it regardless of statute whenever a greater penalty is imposed for a subsequent conviction. [167 Ind App 236, n 3.]

[97] The habitual offender provisions were first enacted as part of the Code of Criminal Procedure in 1927. Michigan essentially adopted the language of New York's habitual offender statute.

The New York statute, authored by State Senator Caleb Baumes, served as a model for recidivist legislation enacted across the nation in the late 1920s. See *People v Stoudemire,* 429 Mich 262, 267-271; 414 NW2d 693 (1987), for a discussion of what came to be called the "Baumes Laws."

[98] See *ante,* pp 231-233.

unreasonable results.[99] The majority says that it was the Legislature's intention that the prosecutor need not inform the defendant before trial on the current offense that if he is convicted of that offense, he will be subject to sentence enhancement on the basis of a prior drug-related conviction. *Adoption of the majority's view would mean that a defendant who was subject to a more severe penalty would be afforded fewer procedural safeguards than a defendant who was subject to a less severe penalty.* Absent a clear expression of legislative intent, the majority's construction should be rejected.

1

The Code of Criminal Procedure provides for sentence enhancement where a defendant who is convicted of a felony has previously been convicted of one or more felonies.[100] These habitual offender provisions are not limited to cases where the defendant's most recent conviction is for the same or a similar offense as his prior conviction(s).

When the prosecutor seeks sentence enhancement under the habitual offender provisions, the general rule is that he must file a supplemental information charging the defendant as an habitual offender within fourteen days of the arraignment

---

[99] See *Magreta v Ambassador Steel Co,* 378 Mich 689, 695-696; 148 NW2d 767 (1967), *(On Rehearing),* 380 Mich 513; 158 NW2d 473 (1968), *Williams v Secretary of State,* 338 Mich 202, 208; 60 NW2d 910 (1953), *Ballinger v Smith,* 328 Mich 23, 31; 43 NW2d 49 (1950), *Gardner-White Co v State Bd of Tax Administration,* 296 Mich 225, 230; 295 NW 624 (1941), *Boyer-Campbell Co v Fry,* 271 Mich 282, 297; 260 NW 165 (1935), and *Attorney General v Detroit United Railway,* 210 Mich 227, 254; 177 NW 726 (1920). See also *King v Midland Co Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977), and *State Farm Mutual Automobile Ins Co v Kurylowicz,* 67 Mich App 568, 578; 242 NW2d 530 (1976). See, generally, 2A Sands, Sutherland Statutory Construction (4th ed), § 45.12, p 54.

[100] See MCL 769.10 *et seq.;* MSA 28.1082 *et seq.*

or before trial if the defendant is tried within that
fourteen-day period. *People v Shelton,* 412 Mich
565, 566; 315 NW2d 537 (1982) (per curiam).[101] If
the prosecutor does not learn of the defendant's
prior felony conviction(s) until after the defen-
dant's conviction of the most recent offense, the
prosecutor may institute postconviction proceed-

---

[101] The habitual offender provisions describe two sets of procedures.
Section 13 provides for a separate proceeding concerning a person's
prior felony conviction(s); there are provisions for the filing of a
separate or supplemental information, trial by jury, and trial in
accordance with the usual practice in criminal cases. See MCL 769.13;
MSA 28.1085. The second sentence of § 12(3) refers to indictment and
conviction as a previous offender. See MCL 769.12(3); MSA 28.1084(3).

In *People v Stratton,* 13 Mich App 350, 356; 164 NW2d 555 (1968),
the Court of Appeals said:

> The procedure set forth in section 13 is to be followed
> whenever it appears to the prosecutor *"after* conviction" of the
> current charge that the felon has a prior felony record. How-
> ever, where it appears to the prosecutor before conviction of
> the current charge that the accused person is a prior felon, the
> accused person is to be informed against as a prior offender
> prior to conviction on the current charge . . . . [Emphasis in
> original.]

Two years later, this Court approved the analysis in *Stratton.* See
*People v Hatt,* 384 Mich 302, 309; 181 NW2d 912 (1970).

Relying on *Hatt* and *Stratton,* this Court in *People v Fountain,* 407
Mich 96, 98; 282 NW2d 168 (1979) (per curiam), held that "[a]
prosecutor who knows a person has a prior felony record must
promptly proceed, if at all, against the person as an habitual of-
fender." The Court also said, however, that "[t]he habitual offender
charges should have been filed with the information which charged
the last felony . . . ." *Id.,* p 99.

In *Shelton, supra,* p 568, the Court held that *Fountain* required
"prompt" filing of the supplemental information, not a simultaneous
filing with the information charging the most recent offense. The
Court defined "promptly" as within fourteen days of the defendant's
arraignment or before trial if the defendant was tried within that
fourteen-day period.

The only exception to the requirement that a prosecutor, who
knows of the defendant's prior felony conviction(s), must charge the
defendant as an habitual offender within fourteen days of the defen-
dant's arraignment is where the delay in filing the supplemental
information is caused by the need to verify out-of-state conviction(s)
based on a rap sheet. See *People v Hendrick,* 398 Mich 410; 247
NW2d 840 (1976).

See also MCR 6.112(C).

ings to sentence the defendant as an habitual offender.[102]

The rules of practice and procedure that have been developed for prosecutions under the habitual offender provisions are based on this Court's construction of the relevant statutes,[103] and its exercise of its supervisory power over the practices and procedures in the courts of this state.[104] *Those rules are not based on the United States Constitution.*[105]

2

Under the habitual offender provisions, where a defendant with one prior felony conviction is convicted of a felony that is punishable "by imprisonment for a term less than life," the trial court "may place the person on probation or sentence the person to imprisonment for a maximum term which is not more than *1½ times* the longest term prescribed for a first conviction of that offense or for a lesser term."[106]

Under the sentence enhancement provision of the controlled substances article, where a defendant with one prior drug-related conviction is convicted of another drug-related offense, he "may

[102] See MCL 769.13; MSA 28.1085. See also *Stratton,* n 101 *supra,* p 356, *Hatt,* n 101 *supra,* p 309, *Fountain,* n 101 *supra,* p 98, and *Shelton, supra,* p 569.

[103] See n 101.

[104] Const 1963, art 6, § 5. See *People v Young,* 410 Mich 363, 367; 301 NW2d 803 (1981) (per curiam), and *Fountain,* n 101 *supra,* pp 99-100 (COLEMAN, C.J., concurring).

The rule requiring that the prosecutor promptly charge the defendant as an habitual offender seeks to avoid the appearance of prosecutorial impropriety and to provide fair notice to the defendant. See *Fountain,* n 101 *supra,* p 99, *Young,* p 367, and *Shelton, supra,* pp 568-569.

[105] Chief Justice COLEMAN's concurring opinion in *People v Fountain,* n 101 *supra,* cites *Oyler* for the proposition that the result in one of the two cases consolidated for appeal in *Fountain* was not required by the United States Constitution.

[106] 1988 PA 90, MCL 769.10; MSA 28.1082.

be imprisoned for a term not more than *twice* the
term otherwise authorized or fined an amount not
more than twice that otherwise authorized, or
both."[107] However, where both the prior and cur-
rent convictions involved 50 grams or more of a
controlled substance, the defendant *"shall be im-
prisoned for life and shall not be eligible for
probation, suspension of sentence, or parole during
that mandatory term."* [108]

The construction placed on the controlled sub-
stances article by the majority attributes to the
Legislature an intention to provide a defendant
facing a possible fifty percent increase in the maxi-
mum sentence with the right to be informed of
that possibility at an early stage in the proceed-
ings, but deny early notice to a defendant who is
facing a possible one hundred percent increase. It
attributes to the Legislature an intention to pro-
vide a defendant facing a possible five- or ten-year
increase in the maximum sentence with early

[107] 1988 PA 144, MCL 333.7413(2); MSA 14.15(7413)(2).

[108] (1) An individual who was convicted previously for a viola-
tion of any of the following offenses and is thereafter convicted
of a second or subsequent violation of any of the following
offenses shall be imprisoned for life and shall not be eligible for
probation, suspension of sentence, or parole during that manda-
tory term:
    (a) A violation of section 7401(2)(a)(ii) or (iii).
    (b) A violation of section 7403(2)(a)(ii) or (iii).
    (c) Conspiracy to commit an offense proscribed by section
7401(2)(a)(ii) or (iii) or section 7403(2)(a)(ii) or (iii). [1988 PA 144,
MCL 333.7413(1); MSA 14.15(7413)(1).]

Section 7401(2)(a) proscribes the delivery and manufacture, and
possession with intent to deliver or manufacture, a schedule 1 or 2
controlled substance. Section 7403(2)(a) proscribes the knowing or
intentional possession of a schedule 1 or 2 controlled substance.
Subsection (ii) applies to offenses involving 225 to 650 grams of a
mixture containing the controlled substance. Subsection (iii) applies to
offenses involving 50 to 225 grams.

When a violation of § 7401(2)(a) or § 7403(2)(a) involves 650 grams
or more, the sentence for a *first* offense is mandatory imprisonment
for life without the possibility of probation, suspension, or parole. See
1988 PA 60, MCL 333.7401, 333.7403; MSA 14.15(7401), 14.15(7403).

notice of that possibility, but not a defendant facing the possibility of mandatory imprisonment for life.

The majority's construction thus attributes to the Legislature a purpose to act in disregard of the conception that the quantity and quality of needed procedural safeguards should be in direct relation to the severity of the possible penalty. I would wait for a clear expression of legislative intent before abandoning the well-established rule that the prosecutor must charge the defendant as a repeat offender when seeking an increased sentence on the basis of a prior conviction.

B

When the Legislature enacted the controlled substances article of the Public Health Code, it is presumed to have acted in contemplation of the longstanding and unbroken rule that the prosecutor is required to charge the defendant as a repeat offender whenever sentence enhancement is sought on the basis of a prior conviction.[109] This has been the rule without regard to whether the statute that authorizes sentence enhancement contained an express requirement that the prosecutor charge the defendant as a repeat offender.

The Legislature could have provided for a depar-

[109] See *People v Evans,* 434 Mich 314, 325, n 6; 454 NW2d 105 (1990) (endorsing the "presumption that the Legislature acts with knowledge of, and in harmony with, existing legislation"), and *People v Harrison,* 194 Mich 363, 369; 160 NW 623 (1916) (in enacting the penalty provision of the local-option law, 1889 PA 207, § 16, the Legislature was presumed to have acted in contemplation of a general provision concerning the execution of judgments in criminal cases, 1846 RS, ch 168, § 4). See also *Endykiewicz v State Hwy Comm,* 414 Mich 377, 390-391; 324 NW2d 755 (1982). See *The Penza,* 9 F2d 527, 528 (CA 2, 1925) (Congress was presumed to have enacted a statute in contemplation of both statutory and customary maritime law). See, generally, 2A Sands, Sutherland Statutory Construction (4th ed), n 99 *supra,* § 45.12, p 55.

ture from this longstanding and unbroken rule by stating that the prosecutor was not required to inform the defendant before trial on the current drug-related offense that, if he is convicted of that offense, he might receive an enhanced sentence on the basis of a prior drug-related conviction. The United States Constitution arguably would permit the Legislature to act in such a manner.[110] When the Legislature disagrees with decisions of the Court, it often amends the statutes to correct the perceived error.[111] The Legislature has not done so in this case.[112]

---

[110] Notice of the possibility of sentence enhancement before trial on the most recent offense is clearly not required by the Due Process Clause of the Fourteenth Amendment. See *Oyler v Boles, supra.*

If the Legislature were to enact a statute that relieved the prosecutor from providing pretrial notice only where a defendant's prior and current offenses are drug related, however, there might be a problem under the Equal Protection Clause of the Fourteenth Amendment. With respect to procedural safeguards, there is no apparent justification for treating a recidivist drug offender differently than an habitual armed robber. Statutes should be construed to avoid potential conflicts with the United States Constitution. See, generally, 2A Sands, Sutherland Statutory Construction (4th ed), n 99 *supra,* § 45.11, p 46.

[111] For example, compare *Beauchamp v Dow Chemical Co,* 427 Mich 1; 398 NW2d 882 (1986), with 1987 PA 28, MCL 418.131; MSA 17.237(131).

[112] The sentence enhancement provision of the controlled substances article, MCL 333.7413; MSA 14.15(7413), was enacted by 1978 PA 368. On two separate occasions after this Court's decisions in *Lester* and *Cobb* (see the text accompanying n 22), the Legislature has amended the sentence enhancement provision, but has not altered the requirement that the prosecutor charge the defendant as a repeat offender. See 1988 PA 12 and 1988 PA 144.

Similarly, the Legislature amended the sentencing provisions concerning driving under the influence of alcohol, MCL 257.625; MSA 9.2325, on four separate occasions after the Court of Appeals decision in *Bosca* (see ns 38-41 and the accompanying text), and on two additional occasions since this Court's approval of that decision in *Urynowicz,* but did not change the requirement that the prosecutor charge the defendant as a repeat offender. See 1976 PA 285, 1978 PA 57, 1978 PA 391, 1980 PA 515, 1982 PA 309, and 1987 PA 109. The Legislature has not amended the sentence enhancement provision for repeat convictions of criminal sexual conduct, MCL 750.520f; MSA 28.788(6), after *Urynowicz* was decided.

C

In not expressly requiring the prosecutor to charge the defendant as a repeat offender, the sentence enhancement provision of the controlled substances article is similar to the sentence enhancement provisions for second or subsequent convictions of criminal sexual conduct, driving under the influence of alcohol, and violation of the liquor law. *And in every single case in which the question was raised, this Court has held, or has expressly approved a decision of the Court of Appeals which held, that the prosecutor must charge the defendant as a repeat offender when seeking sentence enhancement.*[113]

This Court has, on several occasions, endorsed the view expressed by Justice Brandeis in his dissenting opinion in *Burnet v Coronado Oil & Gas Co,* 285 US 393, 406; 52 S Ct 443; 76 L Ed 815 (1932), where he said:

> *Stare decisis* is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right. This is commonly true even where

This Court has sometimes adhered to statutory precedents on the basis of the Legislature's failure to amend the statute to correct an asserted error in construction, especially when the Legislature has subsequently revised other parts of the same statutory provision. See *Dean v Chrysler Corp,* 434 Mich 655, 664-666; 455 NW2d 699 (1990), *Smith v Detroit,* 388 Mich 637, 650-651; 202 NW2d 300 (1972), *In re Clayton Estate,* 343 Mich 101, 106-107; 72 NW2d 1 (1955), and *Consumers Power Co v Muskegon Co,* 346 Mich 243, 250-251; 78 NW2d 223 (1956).

[113] I have not found—nor has the majority cited—a single case involving any of the sentence enhancement provisions here discussed in which this Court has affirmed an enhanced sentence where the defendant was not charged as a repeat offender.

Under the habitual offender provisions of the Code of Criminal Procedure, there are exceptions to the fourteen-day rule of *People v Shelton.* See n 101. In the instant case, the Court of Appeals concluded that the recognized exceptions were not applicable. See *People v Eason,* n 5 *supra,* pp 5-6.

the error is a matter of serious concern, provided correction can be had by legislation.[114] [Emphasis in original; citations omitted.]

This is not to say that it is necessarily improper for a court to abandon a longstanding and unbroken rule in the application of statutes. It does, however, mean that the Court should not do so lightly.[115] The majority's attempt to portray this Court's precedents as wrongly decided is inadequate. That effort is founded on unsupportable characterizations of the Court's decisions. The majority does not claim that the long-established rule has led to unjust results. Nor can the majority relieve itself of the burden of justifying a rejection of settled law by "distinguishing" the prior cases. The bases of distinction proffered by the majority either do not explain at all or only explain partially the Court's decisions.

D

The prosecutor argues, and the majority agrees, that it was the Legislature's intention that the prosecutor would not be required to give early notice of the possibility of sentence enhancement to a defendant who has a prior drug-related conviction. It is said that since the Legislature "required" the prosecutor to charge a defendant as a repeat offender under the habitual offender provi-

---

[114] See *Dean,* n 112 *supra,* p 665, n 11, *Li v Feldt,* 434 Mich 584, 591, n 7; 456 NW2d 55 (1990), *Abendschein v Farrell,* 382 Mich 510, 516-517; 170 NW2d 137 (1969), and *Smith v Lawrence Baking Co,* 370 Mich 169, 177; 121 NW2d 684 (1963). See also *Whetro v Awkerman,* 383 Mich 235, 247; 174 NW2d 783 (1970) (BLACK, J., separate opinion), and *Park v Employment Security Comm,* 355 Mich 103, 145; 94 NW2d 407 (1959) (BLACK, J., concurring).

[115] See, for example, *Parker v Port Huron Hosp,* 361 Mich 1, 10; 105 NW2d 1 (1960) ("Only in the rare case when it is clearly apparent that an error has been made, or changing conditions result in injustice by the application of an outmoded rule, should we deviate from following the established rule").

sions of the Code of Criminal Procedure, the failure to restate a similar requirement in the sentence enhancement provision of the controlled substances article evidences an intention to deny to repeat drug offenders the procedural safeguards that are afforded to other recidivists.

It is again relevant that this Court has always required the prosecutor to charge the defendant as a repeat offender even when such a requirement was not mandated by the literal language of the statute authorizing sentence enhancement. Given this longstanding and unbroken rule, there was no reason for the Legislature to set forth in the controlled substances article a requirement that the prosecutor charge the defendant as a repeat offender. The Legislature's "omission" amounted to nothing more than a failure to restate a proposition that had always been thought obvious.

It is also relevant that the requirement that a prosecutor give early notice of the possibility of sentence enhancement to a defendant in an habitual offender proceeding is the product of this Court's construction of the applicable statutes and of the exercise of its supervisory authority over the courts of this state.[116] The literal language of the habitual offender provisions no more requires early notice than does the literal language of the other sentence enhancement statutes where the Court has imposed a similar requirement. In this respect, *there is no difference between the literal language of the various statutes.*

The majority's argument is based on the "theory" that the Legislature acted with a selective memory. The majority asserts that the Legislature enacted the controlled substances article in contemplation of this Court's decisions that the prose-

[116] See ns 103-104, and the accompanying text.

cutor must charge the defendant as a recidivist under the habitual offender provisions even though the literal language of the statute does not so require, but in ignorance of this Court's decisions that the prosecutor must charge the defendant as a repeat offender under all the other sentence enhancement provisions which also do not require early notice of the possibility of sentence enhancement.

The majority says that it is "highly doubtful that the Legislature was deemed to be aware of decisions of this Court and relied on liquor law cases from the mid-1920's . . . ."[117] If this is true, then it is also "highly doubtful" that the Legislature acted in contemplation of the habitual offender provisions of the Code of Criminal Procedure. Those provisions were enacted in 1927.[118]

In emphasizing the alleged verbal differences between the habitual offender provisions and the sentence enhancement provision of the controlled substances article, the majority employs a mode of analysis that has never before been thought to be persuasive. In *McDonald*,[119] the Court held that the information must contain an allegation of prior conviction even though the statute authorizing sentence enhancement did not expressly so require, and in support of the rule there announced cited decisions involving sentence enhancement statutes that expressly required the prosecutor to charge the defendant as a repeat offender.[120] So too in *Urynowicz*,[121] and so too in the Attorney General's opinion concerning second or subsequent con-

---

[117] *Ante*, p 247, n 31.

[118] See 1927 PA 175, ch IX, §§ 10-13.

[119] See n 26 and the accompanying text.

[120] The Court cited, inter alia, *People v Buck, People v Butler,* and *People v Campbell,* n 26 *supra.*

[121] The Court relied in part on *Butler* (see n 26), and acknowledged that the statute at issue in that case specifically required the prose-

victions of drunk driving.[122] The "verbal difference argument" was the basis of *People v McFadden,* 73 Mich App 232; 251 NW2d 297 (1977), which was in turn the basis of the Court of Appeals decisions in *Wright*[123] and *Urynowicz,*[124] decisions which were reversed by this Court.

In sum, the basis for the majority's assertion concerning legislative intent is a distinction that has never before been thought significant.

E

The majority would reject the longstanding and unbroken rule that the prosecutor must charge the defendant as a repeat offender whenever sentence enhancement is sought on the basis of a prior conviction. It is a rule that until today was thought to be obvious—so obvious that the prosecutor in *Ancksornby* confessed error for failing to charge the defendant as a second offender,[125] the prosecutor in *Urynowicz* advanced this rule before the Court,[126] and the Attorney General adopted the rule in his 1940 opinion.

When the unsupportable characterizations and unpersuasive distinctions of the Court's precedents are "set aside,"[127] the only basis for the majority's

cutor to charge the defendant as a repeat offender. See *Urynowicz, supra,* p 141.

[122] The Attorney General relied on *Ancksornby* and *McDonald,* which involved a statute that did not expressly require the prosecutor to charge the defendant as a repeat offender, and on *Buck, Butler,* and *Campbell,* which involved statutes that did. See n 37.

[123] See n 10.

[124] See *Urynowicz, supra,* pp 139-140.

[125] See n 25.

[126] See *Urynowicz, supra,* p 138.

[127] See, generally, *Employment Div, Oregon Human Resources Dep't v Smith,* 494 US —, —; 110 S Ct 1595; 108 L Ed 2d 876, 905 (1990) (Blackmun, J., dissenting):

abandonment of the longstanding and unbroken rule that the prosecutor must charge the defendant as a repeat offender is that this practice is not required by the Due Process Clause of the Fourteenth Amendment.

This Court has not said that notice of the possibility of sentence enhancement before trial on the current offense was mandated by the United States Constitution. That such notice is not mandated by the United States Constitution is *not a reason* for abandoning precedent requiring the prosecutor to give early notice of the possibility of sentence enhancement.

V

Enough prologue. Correct analysis should begin with the Code of Criminal Procedure, enacted in 1927,[128] by which the Legislature adopted a new sentence enhancement scheme for habitual offenders. The prior statute expressly required the prosecutor to charge the defendant as an habitual offender.[129] The Code of Criminal Procedure ex-

[T]he majority is able to arrive at this view only by mischaracterizing this Court's precedents. The Court discards leading free exercise cases . . . as "hybrid." . . . In short, it effectuates a wholesale overturning of settled law concerning the Religion Clauses of our Constitution. *One hopes that the Court is aware of the consequences, and that its result is not a product of overreaction to the serious problems the country's drug crisis has generated.* [Emphasis added.]

[128] 1927 PA 175.

[129] When any person shall be convicted of any offence, and shall be duly sentenced therefor to confinement in the state prison of this state, for one year or more, *and it shall be alleged in the indictment on which such conviction is had,* and admitted or proved on the trial, *that the convict has before been sentenced to a like punishment* by any court in this state, or in any other of the United States, *for a period not less than one year,* he shall be sentenced to be punished by imprisonment in the state prison not more than seven years, in addition to the punish-

pressly provides that it is not always necessary to charge the defendant as an habitual offender in the information charging the current offense.[130] The Code, rather, authorized the commencement of a separate sentence enhancement proceeding after conviction of the charged offense if "at any time after conviction . . . it shall appear that a person convicted of a felony has previously been convicted of crimes . . . ."[131]

A

In *People v Judge of Recorder's Court*, 251 Mich

> ment prescribed by law for the offence of which he shall then be convicted. [1846 RS, tit XXX, ch 161, § 12. Emphasis added.]

> When any such convict shall have been twice before sentenced to imprisonment at hard labor, for a period of not less than one year at each time, by any court in this state, or in any other of the United States, he shall be sentenced to imprisonment at hard labor for life, or for a term of not less than seven years in addition to the punishment prescribed by law for the offence of which he shall then be convicted. [1846 RS, tit XXX, ch 161, § 13.]

The Court early held that the pleading requirement of § 12 also applied to § 13. *People v Campbell,* n 26 *supra,* p 386.

[130] A person to be punishable under this and the last two preceding sections *need not have been indicted and convicted as a previous offender* in order to receive the increased punishment therein provided, *but may be proceeded against as provided in the following section.* [1927 PA 175, ch IX, § 12 (last sentence). Emphasis added.]

The "following section" is § 13, which read:

> *If at any time after conviction* and either before or after sentence *it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth in any of the three foregoing sections,* it shall be the duty of the prosecuting attorney of the county in which such conviction was had to file an information in such cause accusing the said person of such previous convictions. [1927 PA 175, ch IX, § 13. Emphasis added.]

[131] 1927 PA 175, ch IX, § 13.

626; 232 NW 402 (1930), decided three years after
passage of the Code,[132] the prosecutor filed a sup-
plemental information charging John Figgins as
an habitual offender after he had been convicted of
the charged offense. The trial court ruled that
Figgins was entitled to a preliminary examination
respecting the allegation of prior conviction. The
prosecutor petitioned this Court for the issuance of
a writ of mandamus to compel the trial court to
vacate its order regarding the preliminary exami-
nation.

This Court held that in light of the Code of
Criminal Procedure, it was no longer necessary to
conduct a preliminary examination concerning the
allegation of prior conviction. The Court explained:

> *Prior to the criminal code [1927 PA 175], there*
> *was no provision in the law for an independent*
> *trial to determine the fact of a prior conviction. It*
> *was tried out in the trial for the subsequent of-*
> *fense. It was necessary to charge it in the com-*
> *plaint and warrant and prove it on the examina-*
> *tion and trial unless examination was waived.*
> *Otherwise the court was without jurisdiction to*
> *consider it in imposing sentence. But [1927 PA*
> *175, ch IX, § 13], authorizes an independent trial*
> *of that question on the filing of a supplemental*
> *information after conviction and sentence for the*
> *subsequent offense. . . .* The purpose of an exami-
> nation is to determine if a crime has been commit-
> ted and if there is probable cause for believing the
> accused party committed it. If no crime is charged,
> an examination is not required. In *People v Palm,*
> 245 Mich 396 [223 NW 67 (1929)], it was held that
> a supplemental information, filed after conviction,

---

[132] When *Judge of Recorder's Court* was decided, the Legislature
had already once amended the habitual offender provisions of the
Code of Criminal Procedure. See 1929 PA 24, 1929 CL 17338-17341.
Section 13 and the last sentence of § 12 were not amended.

alleging a prior conviction, does not charge any crime. [*Id.,* p 627. Emphasis added.][133]

The Court's statements indicate that it was not until the enactment of the Code of Criminal Procedure that a trial court had the authority to impose an enhanced sentence where the prosecutor did not proceed from the commencement of the prosecution[134] against the defendant as a repeat offender.[135]

B

The lack of jurisdiction, adverted to in *Judge of Recorder's Court* and remedied in part by the enactment of the Code of Criminal Procedure, could be distinguished from a prosecution under the controlled substances article on the basis that the pre-Code habitual offender provisions expressly required the prosecutor to charge the defendant as a repeat offender,[136] while the controlled substances article does not prescribe any particular procedure to be followed when seeking sentence enhancement for a second or subsequent drug-related conviction. In other words, the jurisdictional problem

---

[133] See also *People v Hatt,* n 101 *supra,* p 308 (quoting *Judge of Recorder's Court*).

[134] That is, the defendant must have been charged in the complaint and warrant as a repeat offender, some evidence respecting the prior conviction must have been presented at the preliminary examination, the information charging the most recent offense must have contained an allegation of prior conviction, and the prior conviction must have been proved at trial.

[135] The views expressed in *Judge of Recorder's Court* find support in earlier decisions of the Court applying the pre-Code habitual offender provisions, 1846 RS, tit XXX, ch 161, §§ 12-13 (quoted in n 129). See *Campbell,* n 129 *supra,* p 386 ("[I]t was necessary that the allegations of such former convictions should be contained in the information, and, if not admitted, proved on the trial, *which statutory requirement must be complied with in order to give the court jurisdiction to sentence respondent as for a third offense . . . .*") (emphasis added).

[136] See n 129.

with imposing an enhanced sentence where the prosecutor has not proceeded from the commencement of the prosecution against the defendant as a repeat offender could be viewed as being limited to situations where the Legislature has affirmatively required that the prosecutor charge previous convictions.

Such a narrow reading of this Court's precedents concerning the jurisdiction of trial courts to impose enhanced sentences is, again, negatived by other decisions of this Court applying statutes that did not specify any particular procedures to be followed when seeking sentence enhancement on the basis of a prior conviction, as in *People v McDonald,* 233 Mich 98; 206 NW 516 (1925), where the Court held that "[t]he information must contain an averment of former conviction, and there must be proof on the trial to maintain it, to justify a conviction and sentence therefor."[137] The Court explained:

> The violation complained of is aggravated by the fact of his former conviction. He is thereby subjected to an enhanced penalty. The purpose of averring and proving it is to *give the court jurisdiction* to impose it. [*Id.,* p 103. Emphasis added.]

The jurisdictional significance of proceeding from the commencement of prosecution against the defendant as a repeat offender—even where the statute authorizing sentence enhancement did not expressly so require—was confirmed in *In re Brazel,* 293 Mich 632; 292 NW 664 (1940), where this Court compared the pre-Code habitual of-

---

[137] *Id.,* pp 100-101.

The Court also said that "the rule herein laid down will apply to all future cases and to all statutes wherein increased punishment is provided for offenders who have theretofore been convicted." *Id.,* p 106.

fender provisions and the liquor law provisions that were applied in *McDonald.*

The Court first noted the statement in *People v Campbell,* 173 Mich 381, 386; 139 NW 24 (1912), that charging the defendant as a repeat offender was necessary to give the trial court the authority to sentence the defendant as an habitual offender. The Court then said:

> It will be noted that [the habitual offender provisions] contained the express mandate that the prior convictions be alleged in the indictment on which conviction of any offense is had.
>
> This was not true of the prohibition law of 1917, as amended, which contained certain provisions in respect to increased punishment for second and subsequent offenses. Attention is called to [1917 PA 338], *where it will be noted that there was no provision requiring the prior convictions to be alleged in the indictment. However, this court held that in order to confer jurisdiction the information must include allegations which specify the prior convictions and that a respondent under such circumstances was entitled to a preliminary examination.*[138] [*Brazel,* p 639. Emphasis added.]

In speaking of "jurisdiction," the Court was not referring to the respective jurisdictions of the circuit court and of the justice of the peace.[139] When the Court decided the liquor law cases, the

---

[138] The Court cited *McDonald, Ancksornby,* and *Van Vorce, supra.*

See also *People v Hendrick,* n 3 *supra,* p 417 (the Court, citing *Campbell* and *Ancksornby,* said that "[a]t one time the Legislature required that allegations of prior felony convictions be included in the information and proved at the trial on the principal charge. This had to 'be complied with in order to give the court jurisdiction to sentence the respondent as for a third offense' ").

[139] See *ante,* p 247, n 31, where the majority says that the "better construction" of the liquor law cases is that "the Court construed the legislation in question as necessarily requiring a separate information filed . . . to provide the circuit court with jurisdiction."

circuit court had jurisdiction over both a first and subsequent offense.[140]

The Court's references to "jurisdiction" were references to the authority of a court—any court— to impose an enhanced sentence on the basis of a prior conviction. Before enactment of the Code of Criminal Procedure, without regard to whether the particular sentence enhancement statute expressly required the prosecutor to charge the defendant as a repeat offender, a trial court possessed the authority to impose an enhanced sentence only where the prosecutor had proceeded from the commencement of prosecution against the defendant as a repeat offender.

C

It is against this historical background that the Court should consider the prosecutor's argument that the procedural safeguards applicable under the habitual offender provisions of the Code of Criminal Procedure do not apply where sentence enhancement is sought under the controlled substances article of the Public Health Code.[141]

---

[140] The jurisdiction of the justice of the peace was then limited to certain statutorily enumerated offenses not here relevant and to "all other offenses punishable by fine not exceeding one hundred dollars, or punishable by imprisonment in the county jail not exceeding three months . . . ." 1899 PA 189, 1915 CL 15769.

A first offense under the liquor law was punishable by a fine of one thousand dollars or imprisonment in a state or county facility for one year. 1919 PA (Ex Sess) 3, amending 1917 PA 338 (quoted in n 24). Thus, the justice of the peace did not have jurisdiction—and the circuit court did have jurisdiction—over a first offense.

The circuit court also had jurisdiction over a first offense in the habitual offender context. Those provisions only applied where the defendant was sentenced for the most recent conviction to imprisonment for one year or more. See 1846 RS, tit XXX, ch 161, §§ 12-13 (quoted in n 129). By definition, the habitual offender provisions could only be invoked where the charged offense was punishable by imprisonment for more than three months. Thus, the justice of the peace would not have had jurisdiction.

[141] 1978 PA 368, MCL 333.7413(2); MSA 14.15(7413)(2).

Rather than disregard this Court's precedents concerning the authority of the trial court to impose an enhanced sentence and rather than hold that the trial court in this case did not have the authority to impose an enhanced sentence because the prosecutor did not proceed from the *commencement of prosecution* against the defendant as a repeat offender, I would hold that the procedures applicable under the habitual offender provisions of the Code of Criminal Procedure also apply where the prosecutor seeks an enhanced sentence pursuant to the provisions of the controlled substances article.[142]

I would thus hold that it is *not* necessary for the defendant to have been charged in the complaint and warrant as a repeat offender *or* that some evidence respecting the prior conviction be presented at the preliminary examination. It is necessary, where the prosecutor knows of the defendant's prior conviction before trial on the most recent offense, that the prosecutor file a supplemental information charging the defendant as a repeat offender within fourteen days of the arraignment or before trial if the defendant is tried within that fourteen-day period.[143] Where the prosecutor does not learn of the defendant's prior conviction until after the defendant is convicted of the most recent offense, the prosecutor may commence a postconviction proceeding to seek an enhanced sentence.[144]

I acknowledge that the habitual offender provisions now state that where the defendant's most

[142] See, generally, *People v Lester,* 417 Mich 927; 330 NW2d 854 (1983) (the Court, citing, inter alia, the habitual offender provisions of the Code of Criminal Procedure, held that "[t]he defendant's sentence may not be enhanced pursuant to MCL 333.7413; MSA 14.15[7413] because he was not charged with being a subsequent offender").

[143] See n 101 and the accompanying text.

[144] *Id.*

recent conviction is a "major controlled substance offense," the defendant "shall be punished as provided by" the controlled substances article of the Public Health Code.[145] I would construe those provisions as evidencing a legislative intent to assure that the quantity and quality of a defendant's punishment—as distinguished from the procedures to be utilized in administering that punishment—are governed by the controlled substances laws and not by the general habitual offender provisions. In this regard, it is significant that the Legislature first "excluded" major controlled substance offenses from the habitual offender provisions at the same time it first adopted mandatory minimum terms of imprisonment for controlled substance offenses.[146] In contrast, the sentencing provisions for habitual offenders are discretionary.

The prosecutor in this case did not file a supplemental information charging Eason as a repeat drug offender within fourteen days of Eason's arraignment. The Court of Appeals concluded that the exceptions to the fourteen-day rule were not applicable. I agree with that determination and would affirm the judgment of the Court of Appeals

[145] MCL 769.10-769.12; MSA 28.1082-28.1084. This proviso was first enacted in 1978 and then specified that a defendant "shall be punished as provided by" the Controlled Substances Act, the statutory predecessor to the controlled substances article of the Public Health Code. See 1978 PA 77. Sections 10-12 of the Code of Criminal Procedure were later amended to refer to the controlled substances article. See 1988 PA 90.

Eason was not convicted of a "major controlled substance offense."

[146] Indeed, the two changes were linked. 1978 PA 77, which first "excluded" major controlled substance offenses from the purview of the habitual offender provisions, did not take effect unless and until 1977 HB 4190 was also enacted. See 1978 PA 77, § 2. HB 4190 was eventually enacted into law as 1978 PA 147. See 1978 PA 77 (compiler's note). 1978 PA 147 amended the Controlled Substances Act to provide for the first time mandatory minimum terms of imprisonment for certain drug-related offenses. The definition of "major controlled substance offense" in the Code of Criminal Procedure corresponded to the offenses for which the Legislature had in the Controlled Substances Act mandated minimum terms of imprisonment.

vacating Eason's sentence and remanding the case for resentencing.